Filed 1/11/19; Certified for publication 2/5/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.F., a Person Coming Under the Juvenile Court Law. | D074260 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518716C) |
| v. | |
| M.F., | |
| Minor and Appellant. | |
| N.W., et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge. Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Minor and Appellant.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Respondent N.W.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Respondent Stephen C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

Minor M.F. appeals from orders at the 12-month review hearing under Welfare and Institutions Code section 366.21, subdivision (f)[1] directing the Agency to extend the reunification period for an additional six-month period and setting the 18-month review hearing more than 23 months from the date he first entered foster care. M.F. challenges the juvenile court's finding the San Diego County Health and Human Services Agency (Agency) did not provide reasonable services to his father. He also contends the juvenile court lacks authority to order continued services beyond the 18-month review date absent special circumstances not present here.

We conclude there is substantial evidence to support the juvenile court's finding that reasonable services were not provided or offered to the parent. We further conclude the juvenile court is authorized to extend reunification services up to the 24-month review date if the court determines that reasonable services were not provided or offered to the parent. Because the statutory framework prohibits setting a section 366.26 hearing at the 12-month and 18-month review hearing when reasonable services have not been provided or offered, the juvenile court is not required to consider the need for a

---

[1]     Further unspecified statutory references are to the Welfare and Institutions Code.

2

continuance under section 352 when extending services. We affirm the findings and orders.

## FACTUAL AND PROCEDURAL BACKGROUND

M.F. is the son of Nicole W. and Stephen C. The Agency detained M.F. in protective custody on December 20, 2016, after he tested positive for methamphetamine and other drugs at birth. Nicole's parental rights to M.F.'s two older half siblings had been terminated after she did not mitigate her substance abuse problems.[2]

In January 2017, Nicole was arrested for vandalism after she broke Stephen's bedroom window during an argument. Nicole and Stephen denied they were in a relationship. Stephen said he was willing to care for M.F. but first needed to find suitable housing and childcare. Stephen had health issues, including heart problems, leg pain, severe asthma, and high blood pressure. At times, he had difficulty walking even short distances. The Agency detained M.F. in the home of the paternal grandmother (caregiver) of one of his half siblings.

At the dispositional hearing, the juvenile court found that Nicole was not entitled to reunification services. The court ordered the Agency to provide services to Stephen. Stephen's reunification case plan required him to complete parenting education, attend Al-Anon codependency groups, and participate in services provided by Cultural Brokers. The Agency also asked that Stephen attend M.F.'s medical and developmental appointments.

---

[2]     The early history of the case is detailed in our unpublished opinion (*In re M.F.* (Aug. 16, 2017, D071940 [nonpub. opn.]).

3

Stephen regularly participated in services at Cultural Brokers. They identified his need for suitable housing as the primary issue preventing reunification and provided housing referrals and other resources. At the end of March, Stephen was arrested on domestic violence charges for slapping Nicole on the cheek.

Stephen regularly visited M.F., who was a happy, healthy and easygoing baby. In July, Stephen told the social worker he forgot to attend Al-Anon and said he would find a group. In August, the caregiver reported that Stephen told her that Nicole had stabbed him during an argument. Stephen would not discuss the incident with the social worker.

The contested six-month review hearing was held on September 26, 2017. The Agency recommended the juvenile court terminate Stephen's reunification services and set a section 366.26 hearing. The social worker believed that Stephen was not able to protect M.F. from harm from Nicole, who continued to display dangerous and violent behavior.

Cultural Brokers reported that Stephen had completed 10 of 17 parenting classes. He continued to look for appropriate housing for himself and M.F. Although the Agency's referral was closed, Cultural Brokers continued to provide Stephen with extra accommodations assistance because he was "comprehension impaired." The social worker reported that Stephen attended three Al-Anon classes in September.

The juvenile court found that Stephen had made some progress with his case plan but significant protective issues remained. Stephen was reticent to acknowledge the nature of his codependent relationship with Nicole. The court said Stephen needed to

4

address codependency, domestic violence and communication issues, and ordered the Agency to submit a revised case plan and provide therapeutic services to Stephen.

The social worker provided a list of 44 San Diego County TERM[3] therapists to Stephen on October 17. The social worker, Cultural Brokers, and Stephen agreed the best practice was to have Stephen engage in therapy with an African American therapist. The social worker gave Stephen the names of four African American therapists (short list).

A new social worker was assigned to the case in late October. He did not discuss therapy services with Stephen.

At some point in time not clear in the record, Stephen began having day-long unsupervised visits with M.F. M.F.'s court-appointed special advocate (CASA) reported that overnight visits were scheduled to begin in late February 2018, with longer visits to follow. Stephen was always excited to see M.F. and he was very attentive and gentle with his son. M.F. seemed to enjoy spending time with his father. Stephen and Nicole had been living together but she recently moved away. Nicole had visited M.F. only once in eight months. She was arrested in January 2018 on charges of possession of methamphetamine.

In its initial report prepared for the 12-month review hearing, the Agency recommended the juvenile court extend reunification services to Stephen for an additional six months. The Agency planned to expand Stephen's unsupervised visits with

---

3    The Treatment Evaluation Review Management program (TERM) are therapists approved by the Agency and juvenile court to provide services to parents in dependency cases and file reports directly with the court.

M.F. Stephen had made good progress with his service goals. His communication with the caregiver was good. He completed his parenting education and the required number of Al-Anon classes and was receiving ongoing support services from Cultural Brokers. Stephen's home was clean and appropriate for M.F. In-home family preservation services (IFPP), designed to help Stephen identify unsafe behaviors by the mother, were in place in anticipation of M.F.'s 60-day extended visit with Stephen. The social worker believed the prognosis for returning M.F. to his father's care by the 18-month review date was good. Stephen was demonstrating a strong commitment to his son.

At a meeting on March 5 to discuss implementing M.F.'s overnight and extended visitation with Stephen, the caregiver presented a public assistance application for utility services at Stephen's home in Nicole's name. The caregiver said she had discovered the application in M.F.'s diaper bag after his last visit with Stephen on March 2. Stephen appeared confused and said he had no knowledge of the application. He denied Nicole was living with him. On investigation, the social worker determined that Nicole did not appear to be living at Stephen's home.

On March 19, the Agency changed its recommendation from reunification to termination of services and referral to a section 366.26 hearing. When the social worker met with Stephen at his residence on March 13, the electricity was off. Stephen could not provide a lease or rental agreement. The social worker received a cancellation notice for the IFPP referral. Stephen told the social worker he and M.F. saw Nicole at a taco shop near his house. He allowed Nicole to see M.F. because they were in a public place and he wanted M.F. to know his mother. The Agency believed Stephen was allowing Nicole

6

to stay with him. The social worker said Nicole's untreated substance abuse and the parents' history of domestic violence placed M.F. at risk of physical and emotional harm or death.

In an addendum report, the social worker informed the court that support services were being provided to the caregiver. The caregiver appeared to be overwhelmed caring for M.F. and his brother, who had behavioral challenges. The house was in disarray and the children were dirty. The social worker informed the caregiver it would consider removing M.F. from her care if the situation did not improve.

The contested 12-month review hearing was heard on May 30 and June 5, 2018. Stephen testified he did not attend M.F.'s medical appointments because he did not learn about them until after the fact. He completed 16 weeks at Al-Anon. The social worker said he could continue with Al-Anon if he wanted to do so. Stephen attended for another month. With assistance from Cultural Brokers, Stephen tried to obtain services from a TERM therapist. He did not receive individual therapy because he could not find a therapist. When he and M.F. saw Nicole at a taco shop, he reported the contact, which lasted less than five minutes, to the social worker. Nicole never visited him when he had M.F. in his care. Because of Nicole's drug use, he would never allow M.F. to be alone with Nicole or allow her to spend the night at his home.

Carol B., a psychiatric nurse, ran the family support program at Cultural Brokers. She said Stephen completed 17 parenting classes and had almost completed a second, voluntary, parenting program. Cultural Brokers did not offer individual therapy. Carol was present when Stephen telephoned therapists from a list provided by the Agency. He

left more than one message with each therapist.  To her knowledge, they never returned his calls.  The social worker said he would send her an updated list of TERM therapists but she never received it.

The social worker testified Stephen completed all aspects of his case plan except therapy.  He was assigned to the case in late October 2017 and first discussed therapy with Stephen on March 6, 2018.  The social worker said he did not provide any therapy referrals to Stephen during their meetings in March and April.  He acknowledged it could be difficult to contact a TERM therapist.  Stephen did not ask for his help.  The social worker did not respond to two e-mails sent by Stephen's counsel in November 2017 concerning Stephen's difficulty finding a therapist.  He acknowledged the court report did not mention Stephen's problems finding a therapist.  The social worker testified he telephoned the therapists on the short list, without success.  He later testified he never made any phone calls to therapists on Stephen's behalf because that was the parent's responsibility.

The social worker said Stephen's case plan required him to attend nine Al-Anon meetings, which he did.  He did not inform Stephen of M.F.'s medical and developmental appointments because it was Stephen's responsibility to find out the date and time of the appointments.  The social worker acknowledged that IFPP closed the service referral only after he told them Stephen was not able to have M.F. with him on a 60-day trial visit due to the condition of his home.

The social worker testified Stephen had resolved the utility issue and his housing was now appropriate for M.F.  Stephen's unsupervised visits with M.F. were four to five

8

hours each. Stephen was responsible for all of M.F.'s needs during his visits, with no concerns about his parenting skills. The Agency did not expand visits to overnights because of the lack of electricity at the house. The social worker believed ongoing risk factors included Stephen's understanding of M.F.'s medical and developmental issues, Stephen's own medical problems, his continued contact with Nicole, housing issues, and M.F.'s age. The social worker said he and Stephen never discussed coparenting with an addict and Stephen did not receive TERM therapy to address the issue. He acknowledged Stephen's medical conditions never interfered with his ability to parent M.F.

The juvenile court found that returning M.F. to the parents' custody would create a substantial risk of detriment to his physical and emotional well-being. The court had specifically identified Stephen's need for individual therapy and domestic violence treatment and had ordered the Agency to provide those services to Stephen. The goal was to give him the tools to understand that under certain circumstances Nicole presented a danger to M.F. Stephen did not appear to understand the pitfalls of coparenting with an addict.

The juvenile court found that reasonable services were not provided or offered to Stephen. The court said, "[A] lot of the social worker's testimony was equivocal. It was qualified and sometimes it seemed just downright evasive." The Agency's court report did not mention services for domestic violence or individual therapy − services the court had specifically tailored for Stephen at the six-month review hearing. A lapse of services also occurred when the social worker told Stephen he completed his Al-Anon

9

requirement without determining whether he had met the program's goals. The court found that lack of electricity in the home was not a protective issue and there was no compelling evidence to show that Stephen was arranging contact between M.F. and Nicole.

The court directed the social worker to identify therapists who would meet Stephen's needs and to advise Stephen of all M.F.'s therapy and medical appointments at least a week in advance. In setting a review hearing in six months, the court said it was aware the 18-month review date in this case was in 16 days. The court realized there was a difference of opinion about extending reunification services past the 18-month review date. Nevertheless, it made no sense to give Stephen only two weeks to complete services when the Agency did not provide important reunification services to him as directed by the juvenile court.

## DISCUSSION

### I

### Reasonable Services

#### A

#### *Arguments*

M.F. argues the juvenile court abused its discretion in finding that reasonable services were not provided or offered to his father (no reasonable services finding). He argues there is no evidentiary support for the juvenile court's finding that reasonable services were not provided or offered to Stephen. He points out the Agency provided or offered many services to Stephen for almost 18 months and gave him an extensive list of

10

therapists. M.F. acknowledges the record shows that therapy may have been difficult to schedule but asserts there is no evidence to show that an unwarranted, extended reunification period would resolve persistent risk factors and allow him to safely return to his father's custody within the extended time period. He contends the court committed reversible error when it extended the reunification period for six months, well beyond the time limit that applied in his case as a child under the age of three years.

B

<em>Relevant Legal Principles and Standard of Review</em>

Family reunification services play a critical role in dependency proceedings. (§ 361.5; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563; *In re Joshua M.* (1998) 66 Cal.App.4th 458, 467; see 42 U.S.C. § 629a(a)(7).) At the dispositional hearing, the court is required to order the agency to provide child welfare services to the child and his or her parents. (§ 361.5, subd. (a).) Services "may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children." (§ 300.2.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793-794.)

At each review hearing, if the child is not returned to his or her parent, the juvenile court is required to determine whether "reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent . . ." (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a).) The "adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of

11

each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.)  To support a finding that reasonable services were offered or provided to the parent, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ."  (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 (*Riva M.*); *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426 (*Tracy J.*).)

At the 12-month and 18-month review hearings, the juvenile court may not set a section 366.26 hearing unless it finds by clear and convincing evidence that reasonable services were offered or provided to the parent.  (§§ 366.21, subd. (g)(1)(C)(ii), 366.22, subd. (b)(3)(C).)  "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt."  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238 (*T.J.*).)

We review a reasonable services finding "in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard*."  (*T.J.*, *supra*, 21 Cal.App.5th at p. 1229.)  In determining whether there is substantial evidence to support the court's reasonable services finding, we review the record in the light most favorable to the court's finding and draw all reasonable inferences from the evidence to support the findings and orders.  We do not reweigh the evidence or exercise independent judgment, but merely determine whether there are

12

sufficient facts to support the findings of the trial court. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.) The burden is on the petitioner to show that the evidence is insufficient to support the juvenile court's findings. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

In applying the law to the facts, we keep in mind the juvenile court questioned the social worker's credibility and found that the Agency's court report was misleading because it omitted information about Stephen's case plan.

C

*Substantial Evidence Supports the Court's Finding Reasonable Services Were Not Provided or Offered to Stephen*

We are not persuaded by M.F.'s argument there is no evidentiary support for the court's no reasonable services finding. M.F. recites evidence that, if credited by the juvenile court, would have supported the finding that reasonable services were provided or offered. Although the record undoubtedly shows that significant services were provided to Stephen, the issue on appeal is whether the evidence supports a finding that reasonable services were not provided or offered to Stephen. We do not reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1166.) The record contains substantial evidence to support the juvenile court's finding that reasonable services were not provided or offered. (*In re J.E.* (2016) 3 Cal.App.5th 557, 559 (*J.E.*).)

The record shows that the Agency did not provide services that were specifically tailored by the juvenile court to mitigate the risk to M.F. caused by his parents' volatile

13

relationship and Nicole's drug use. (§366.21, subd. (e)(2) [at the six-month review hearing, the court shall order any additional services reasonably believed to facilitate the return of the child to the parent's custody].) The juvenile court's detriment findings at the 12-month review hearing indicate Stephen's ability to protect M.F. from Nicole, including his lack of understanding about domestic violence, was the only protective issue he did not resolve. Stephen completed all the requirements of his case plan except therapy.

In response to the juvenile court's order, a social worker gave a list of 44 TERM therapists to Stephen. M.F. acknowledges Stephen's difficulties in securing therapy but argues the list provided by the Agency is sufficient to show that Stephen was offered reasonable therapeutic services. Although providing a list of approved therapists to Stephen was a good starting point, it was merely a starting point. Services must not only be appropriately tailored; they must be accessible. (*T.J.*, *supra*, 21 Cal.App.5th at p. 1242.) Delays in providing services also may be grounds for a finding of no reasonable services. (*Id*. at p 1244.) Here, appropriate therapeutic services for Stephen were inaccessible and the error was compounded by the social worker's delayed response.

After meeting with Stephen and Cultural Brokers, a social worker agreed Stephen would benefit from having an African American therapist and provided a short list of four therapists to Stephen. None of the therapists on that list appeared to be taking new patients from the dependency system. Stephen telephoned each therapist on the short list more than once and did not receive any return telephone calls. The newly assigned social worker did not respond to two e-mails from Stephen's attorney in November 2017

14

informing him of Stephen's difficulties in finding a therapist.  Although required to meet monthly with Stephen, the social worker did not discuss court-ordered therapy with him until March 2017, more than four months after he was assigned to the case.  He did not provide the names of any other TERM therapists to Stephen when they met in March and April or direct Stephen to contact therapists on the nonpreferred list.  At some point in time, the social worker promised to send a new list of TERM therapists to Cultural Brokers but apparently did not follow through.  The social worker testified he was aware that parents sometimes needed assistance finding a TERM therapist.  He did not make any telephone calls to therapists on Stephen's behalf.

The record shows that the social worker was aware of Stephen's problems securing therapy but did not assist him in a timely manner.  Thus, the social worker did not meet his obligation to make *reasonable* efforts to assist Stephen in an area where accessibility proved difficult.  (*T.J.*, *supra*, 21 Cal.App.5th at p. 1242; *Riva M.*, *supra*, 235 Cal.App.3d at p. 414 [social worker must make reasonable efforts to assist the parent where compliance proves difficult].)

In addition to the lack of therapy, the juvenile court found that it was insufficient for the social worker to have checked off Stephen's Al-Anon attendance without determining whether he had met the program's goals after attending nine meetings.  In view of the failure of the Agency to provide therapy to Stephen to address codependency issues, the juvenile court reasonably determined this was a significant lapse by the Agency in providing services to mitigate the protective risk to M.F.

15

The no reasonable services finding is also supported by the social worker's decision to not proceed with planned expanded visitation, including overnights and a trial period in the home with in-home support services. Reasonable visitation is an essential component of any reunification plan. It must be as frequent as possible, consistent with the well-being of the child. (*Tracy J.*, *supra*, 202 Cal.App.4th at p. 1426.) The social worker said on investigation it appeared Nicole was not residing in the home. While the lack of electricity in the home was not ideal, it was not a protective risk to M.F. at that time of the year in San Diego, and the Agency should not have curtailed visitation on that ground. If it believed lack of electricity in the home presented a risk to the child, the Agency should have offered services to assist Stephen instead of cancelling any expanded visitation between father and child. The record shows the social worker reported that IFPP cancelled in-home services because of the conditions of the home but later acknowledged he had cancelled those services.

The juvenile court ordered services that were "tailored to the particular needs of the family arising out of the unique circumstances of the situation." (*J.E.*, *supra*, 3 Cal.App.5th at p. 559.) Stephen completed all of his case plan requirements other than therapy and maintained regular and consistent visitation with M.F. He tried but was unable to find a therapist. The social worker ignored Stephen's requests for assistance, made through counsel. The omission of any discussion of therapy from the report and addendums the Agency provided to the court for the 12-month review hearing support the conclusion the Agency did not make reasonable efforts to provide therapy to Stephen. In addition, the Agency unreasonably cancelled plans for a 60-day home visit, including

16

reasonable in-home support services, after determining Nicole was not residing in the home. Thus, the record contains substantial evidence to show the Agency did not provide reasonable services to Stephen.

## II

## Extension of Services Past the 18-Month Review Date

## A

### *The Parties' Contentions and Standard of Review*[4]

M.F. asserts the court should have terminated reunification services and set a section 366.26 hearing at the 12-month review hearing because there was not a substantial probability of his safe return to his father's care. M.F. contends the reunification period for a child under the age of three years at the time of removal from the home (child under three) may not exceed 12 months. Alternatively, M.F. argues if the statutory scheme authorizes an extension of services beyond the 12-month review date, the court must find there is a substantial probability the child will be safely returned to the custody of the parent within the extended time period before it may extend services.

The Agency and Nicole agree section 361.5, subdivision (a)(4)(A), authorizes the juvenile court to provide services to the 24-month review date but only at the 18-month review hearing held pursuant to section 366.22. The Agency contends a finding of no

_____

4     We requested further briefing from the parties on whether, notwithstanding contrary provisions in the dependency scheme, section 361.5, subdivision (a)(4)(A), authorizes the juvenile court to extend court-ordered services up to a maximum time period not to exceed 24 months if it finds that reasonable services have not been provided to the parent. (See also § 366.22, subd. (b).)

reasonable services does not grant the juvenile court discretion to order additional services *beyond* the next review date but only *until* the next review date. The Agency argues the court should not have set the 18-month review hearing beyond the mandatory time limits without assessing the need for a continuance of the review hearing under section 352, which permits a continuance of any hearing beyond statutory time limits if not contrary to the best interests of the child. Acknowledging that any error was harmless, the Agency asks this court to clarify the procedure to extend reunification services past the 18-month review date.

Stephen submits a plain reading of section 361.5, subdivision (a)(4)(A), supports the juvenile court's order extending services past the 18-month review date. He contends the statutory scheme allows the juvenile court to continue reunification services to the parent to the 24-month review date, without qualification, when the court has found that reasonable services were not provided or offered to the parent.

When the issue on appeal involves the interpretation and proper application of the dependency statutes, review is de novo. (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.)

B

*Where Reasonable Services Have Not Been Provided or Offered to the Parent, The Juvenile Court Is Not Required to Assess the Likelihood of Reunification Before It Extends Services*

We first address M.F.'s argument there is no evidence in the record to show that an extended reunification period would mitigate the ongoing risk factors to M.F. and

18

therefore the juvenile court erred in extending the reunification period past the 18-month review date.

The reviewing court addresses the issue of reasonable services independently of the issue whether there is a substantial probability the child will be returned to the physical custody of the parent within the extended time period. (*T.J.*, *supra*, 21 Cal.App.5th at p. 1249.) The focus on review is strictly on the reasonable services issue. (*Ibid.*) To incorporate an assessment of the likelihood of reunification in reviewing a reasonable services finding would be unfair to a parent who did not receive court-ordered services tailored to mitigate risk to the child and allow the child's safe return to the care of his parent. When appropriate services designed to mitigate risk to the child have not been provided to a parent, it is likely risk to the child will not have been mitigated. Thus, where reasonable services have not been provided or offered to a parent, there is a substantial likelihood the juvenile court's finding the parent is not likely capable of safely resuming custody of his or her child may be erroneous. (*Daniel G.* (1994) 25 Cal.App.4th 1205, 1215-1216.) Providing reasonable services is one of "the precise and demanding substantive and procedural requirements . . . carefully calculated to constrain judicial discretion, diminish the risk of erroneous findings of parental inadequacy and detriment to the child, and otherwise protect the legitimate interests of the parents." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 256.) Therefore, "to meet due process requirements at the termination stage, the court must be satisfied reasonable services have been offered during the reunification stage." (*Daniel G.*, *supra*, at pp. 1215-1216; *T.J.*, *supra*, at p. 1256.)

Moreover, even if such a finding were necessary, there is ample evidence in the record to show a substantial probability that an extended time period would allow M.F. to be safely returned to his father's physical custody. (§ 361.5, subds. (a)(3)(A), (a)(4)(A).) Until early March 2018, the Agency was proceeding with plans to place M.F. with Stephen for a 60-day home visit. The social worker represented that Stephen was committed to his son and reunification was likely within the 18-month reunification period. There were no concerns reported about Stephen's parenting skills or M.F.'s bond with his father. Stephen had completed all case plan requirements other than therapy. The Agency appeared willing to reunify M.F. with Stephen despite his lack of therapeutic treatment, only to reverse course when the social worker became concerned about the possibility of Nicole's continued involvement in Stephen's life and the lack of electricity in the home. On investigation, the social worker determined Nicole was not living in Stephen's home. The juvenile court found that the lack of electricity was not a protective issue and there was no compelling evidence to show that Stephen was arranging contact with Nicole. In view of the juvenile court's findings, the record amply supports the reasonable inference an extended reunification period may have mitigated the protective issues to the extent M.F. could be safely returned to his father's care.

C

*The Juvenile Court May Continue Services to the 24-Month Review Date on a*
*No Reasonable Services Finding*

We reject M.F.'s argument the juvenile court is authorized to provide services to a parent of a child under three only to the 12-month review date. Section 361.5,

20

subdivision (a)(1)(B), which governs services to parents of a child under three, provides that court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the child entered foster care. However, section 361.5, subdivision (a)(1)(B), cannot be read without considering it within the context of the statute as a whole. (*In re D.S.* (2012) 207 Cal.App.4th 1088, 1097, 1099 [a statute is read with reference to the entire scheme of law of which it is part].)

Section 361.5, subdivision (a)(3)(A), provides: "*Notwithstanding* [section 361.5, subdivision (a)(1)(A), (B) and (C)], court-ordered services may be extended up to a maximum time period not to exceed 18 months . . . . The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned [home] within the extended time period *or that reasonable services have not been provided to the parent* or guardian." The word "notwithstanding" means "in spite of." (Black's Law Dictionary (10th ed. 2014).) Thus, if the circumstances described in section 361.5, subdivision (a)(3)(A) exist, it overrides the limitation set forth in section 361.5, subdivision (a)(1)(B). Those circumstances include a finding that reasonable services were not provided or offered to the parent. (§ 361.5, subd. (a)(3)(A); see also (§ 361.5, subd. (a)(4)(A) [*notwithstanding* the 18-month limitation, services may be extended to the 24-month review date].) In addition, section 366.21, subdivisions (g)(1)(C)(ii) and (g)(4), operate to prohibit the court from terminating services and setting a section 366.26 hearing at the 12-month review hearing unless the court has found by clear and convincing evidence that reasonable services were provided or offered to the parent.

The more complex issue is whether the statutory framework permits the extension of services past the 18-month review date for a child under three. Here, the no reasonable services finding was made at the 12-month review hearing. However, the 12-month review hearing was held within weeks of the 18-month review date and an extended time period necessarily ran beyond that date.

Justice Goodwin Liu describes the ambiguous statutory framework and conflicting case law on the issue of whether the juvenile court has the authority to continue services beyond the 18-month review date. (*J.C. v. Superior Court* (Aug. 23, 2017, S243357) Statement Respecting Denial of Review by Liu, J. [2017 Cal. Lexis 6576, at p. *11] [Statement, J. Liu].) He notes that section 366.22 requires the juvenile court to order a section 366.26 hearing if the child is not returned to a parent at the 18-month review hearing. However, "other provisions suggest that the placement process may not move forward unless the court finds that reasonable reunification services have been provided. . . . Section 366.21, subdivision (g)(1)(C)(ii) and section 366.22, subdivision (b)(3) both state that the 'court shall not order that a hearing pursuant to Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian.' " (Statement, J. Liu, *supra*.) " In sum, there appears to be a substantial tension in the statutory scheme. On one hand, there are provisions stating that reunification services must cease after 18 months and that a section 366.26 placement hearing must be ordered no later than 18 months after the child has been removed from parental custody. On the other hand, there are provisions

22

requiring or strongly implying that reasonable reunification services must be provided before a section 366.26 placement hearing is ordered." (Statement, J. Liu, *supra*.)

There is a split of authority in case law whether the juvenile court must observe the 18-month deadline for setting a section 366.26 placement hearing when reasonable services have not been provided. (See *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 224 [juvenile court could not 'make the necessary findings to extend services beyond 18 months, regardless of whether or not reasonable services were provided' because 'the statutorily required factors were not present'].) Other cases have reached a contrary conclusion. (See *J.E.*, *supra*, 3 Cal.App.5th at pp. 563-566; *Tracy J.*, *supra*, 202 Cal.App.4th at p. 1424 [court may continue the 18-month hearing under section 352 if it finds that reasonable family reunification services have not been offered or provided to the parents]; *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016 [Legislature did not intend to strictly enforce termination of services at the 18-month review hearing over all other concerns including preservation of the family when appropriate]; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1795-1796; Statement, J. Liu, *supra*.)

In *T.J.*, *supra*, 21 Cal.App.5th at p. 1257, the First District Court of Appeal explicitly addressed the issues raised by Justice Liu. In concluding that the juvenile court has the authority to extend reunification services to the 24-month review date on a finding that reasonable services were not provided or offered to a parent, the *T.J.* court relied on statutes governing the 18-month review hearing, prior case law supporting an extended reunification period, and principles of due process. (*T.J.*, *supra*, at pp. 1251-

23

1257.) The court also held the failure to provide reasonable services justifies an extension of services beyond the 18-month review date without a showing of the child's best interests or substantial probability of return, and even if the permanent plan is not to return the child to the parent. (*Id.*, at p. 1256.)

In discussing the statutory basis for its holding, the *T.J.* court stated, "we think the statutory scheme governing the timeline for reunification services specifically authorizes extended services beyond 18 months in the circumstances we have here. That scheme begins with a presumptive minimum services period of either six months for children under age three or 12 months for children age three and older;[5] it then permits continuances beyond the permanency hearing with extended periods of services in narrowly defined circumstances, first, up to an additional six months[6] where the

---

5       Sections 361.5, subdivision (a)(1)(A)–(C); 366.21, subdivision (g). In 2009, the Legislature enacted a set of amendments to sections 361.5 and section 388 that effected a "major policy shift" away from the view that these timelines were maximums. (Seiser & Kumli, *supra*, § 2.129[1], p. 2-455.) "The Assembly Committee on Human Services report [for this legislation] explained the author's intent was to afford parents 'a *minimum* (emphasis added) of 6 months of reunification services for children under three and 12 months of reunification services for children over the age of three.' (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008, p. 2 [italics and parenthetical in original].) ... [¶] The report stated that, '[a]s amended, this bill would continue to allow courts to change, modify or set aside initial orders for reunification services, but would narrow the instances in which the court could use this discretion to those in which changed circumstances or new evidence, if available at the time of the disposition hearing, could have lead the court to bypass reunification services.' (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008, p. 4.)" (*M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 846–847.)

6       Sections 361.5, subdivision (a)(3)(A), section 366.21. subdivisions (e)(3) and (g)(1).

24

permanent plan calls for returning the child to parental custody[7] and there is a substantial probability of return within the "extended time period";[8] and, second, up to another six months[9] where there is a substantial probability of return by 24 months and it is in the "best interests of the child" to order the extension.[10]  Stated in somewhat more simplified terms, there is the possibility of optional, extended periods of services beyond the six- or 12-month minimums after the required period for services has elapsed, but only where the permanent plan is to return the child to parental custody and enough progress toward reunification has been shown to warrant a finding of substantial probability of return, with an additional 'best interests of the child' finding required for the second extension.  Notably, however, for each of the extended six-month periods, *the governing statutes use disjunctive phrasing suggesting that a past failure to provide reasonable services for the requisite minimum period—by itself—will justify granting an extension.*[11]"  (*T.J.*, *supra*, 21 Cal.App.5th at pp. 1254-1255 [italics added].)

---

7       Section 361.5, subdivision (a)(3)(A).

8       Sections 361.5, subdivision (a)(3)(A), (4)(A), 366.21, subdivision (g)(1).  See also section 366.21, subdivision (e)(3) (within six months).

9       Section 361.5, subdivision (a)(4)(A).

10      Section 366.22, subdivision (b).

11      See sections 361.5, subdivision (a)(3)(A) ("*The court shall extend the time period only if it finds that* there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period *or that reasonable services have not been provided* to the parent or guardian." (italics added)), (4)(A) ("*The court shall extend the time period only if it finds that* it is in the child's best

25

We agree with *T.J.* that the statutory framework governing the 12-month and 18-month review hearings allow the juvenile court to extend services on a finding that reasonable services were not offered or provided to a parent, even if it means that services will be offered beyond the 18-month review date.  In addition, as we have discussed, section 361.5, subdivision (a)(4)(A), explicitly authorizes the extension of services to the 24-month date on specified circumstances not applicable here *or on a finding that reasonable services were not offered or provided*.  Thus, sections 361.5, subdivisions (a)(3)(A) and (a)(4)(A), support the conclusion the juvenile court may extend services at the 12-month hearing even if the time period extends past the 18-month review date.  We hold that the juvenile court may extend the reunification period past the 18-month review date where the Agency did not provide or offer reasonable services to a parent of a child who was under three years of age at the time of removal. (*T.J.*, *supra*, 21 Cal.App.5th at pp. 1254-1255.)

C

*The Juvenile Court Is Not Required to Proceed Under Section 352 to Extend Services on a No Reasonable Services Finding*

The Agency argues the juvenile court may only extend services to the next review date or must continue any review hearing under section 352.  Section 352 grants the juvenile court the discretion to "continue any hearing under this chapter beyond the time

---

interest to have the time period extended and that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian who is described in subdivision (b) of Section 366.22 within the extended time period, *or that reasonable services have not been provided* to the parent or guardian." (italics added)), 366.22, subdivisions (e)(3) (similar), (g)(1) (similar), 366.22, subdivision (b) (similar).

limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor." (§ 352.) Several appellate courts, including ours, have held that the court may continue the 18–month review hearing under section 352 if it finds that reasonable family reunification services have not been offered or provided to the parent. (*J.E.*, *supra*, 3 Cal.App.5th at p. 564; *Tracy J.*, *supra*, 202 Cal.App.4th at p. 1424; *Mark N. v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1017.)

In *T.J.*, the reviewing court concluded that in addition to the general authority to continue dependency hearings under section 352, the statutory scheme governing the provision of reunification services specifically authorizes the juvenile court to extend services beyond 18 months in the circumstances without considering section 352. (*T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at pp. 1253–1257.) We agree. Statutes governing the 12-month and 18-month review hearing state: "The court shall not order that a hearing pursuant to Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian." (§§ 366.21, subd. (g)(1)(C)(ii); 366.22, subd. (b)(3)(C); § 366.21, subd. (g)(4) [court may set a section 366.26 hearing only if it finds by clear and convincing evidence that reasonable services were provided or offered to the parent].) These provisions indicate the juvenile court has little discretion but to offer an additional period of services to the parent where the agency has not met its burden of proof with respect to services.

Similarly, we are not persuaded by the Agency's argument the juvenile court only has discretion to continue services to the next review hearing date, no matter how soon

27

that date falls after the previous hearing. In directing the juvenile court to extend services up to a maximum time period not to exceed 18 months (361.5, subd. (a)(3)(A)) or 24 months (361.5., subd. (a)(4)(A)), the Legislature assumes review hearings are held in a timely fashion; that is, the 12-month hearing is held within 12 months of the date the child entered foster care and the 18-month hearing is held within 18 months after the child was initially removed from the physical custody of the parents. (361.5, subds. (a)(1)(A), (B) & (a)(3)(A).)

The juvenile court found "it made no sense" to continue services only to the 18-month review date, which was in two weeks time. We agree with the juvenile court. When the agency has been ordered to provide reasonable services to a parent and has failed to do so, the parent is entitled to services during an "extended time period." (361.5, subds. (a)(3)(A) & (a)(4)(A).) While the juvenile court's ruling extending services will necessarily result in a combined 18-month and 24-month review hearing, it will avoid expending scarce judicial resources on another hearing under substantially the same circumstances as the previous hearing. The decision when to schedule the next review hearing is committed to the sound discretion of the juvenile court. If the next review hearing is not for several months, the juvenile court may set a hearing on that date to review the status of the child, the Agency's good faith effort to provide services, and the parent's progress with those services, keeping in mind the remedy, generally, for failing to provide or offer reasonable services during the previous review period is to extend services for another review period. (*Ibid*.; see *In re A.G.* (2017) 12 Cal.App.5th 994, 1005 [remedy for the failure to provide court-ordered reunification services to a parent is

28

to provide an additional period of reunification services to that parent and to make a finding on the record that reasonable services were not provided or offered].)

## DISPOSITION

The findings and orders are affirmed.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

Filed 2/5/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.F., a Person Coming Under the Juvenile Court Law. | D074260 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518716C) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| M.F., | |
| Minor and Appellant; | |
| N.W. et al., | |
| Defendants and Respondents. | |

THE COURT:

The opinion in this case filed January 11, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1102(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to: All parties