Filed 2/2/23  Claudia M. v. Superior Court CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CLAUDIA M. et al., <br><br> Petitioners <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY <br><br> Respondent; <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Real Party in Interest. | B312603, consolidated with B314964 <br> (Los Angeles County Super. Ct. No. 20CCJP04357A-B) |

ORIGINAL PROCEEDINGS in mandate.  Annabelle G. Cortez, Judge, and Robin R. Kessler, Judge Pro Tempore. Petitions denied.

Robert McLaughlin, under appointment by the Court of Appeal, for Petitioner Claudia M.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Petitioner Jesus P.

No appearance for Respondent.

Dawyn R. Harrison, Acting County Counsel, and Kim Nemoy, Assistant County Counsel, for Real Party in Interest.

* * * * * *

The juvenile court declared the two young children of Claudia M. (mother) and Jesus P. (father) to be dependents, and ordered the Los Angeles Department of Children and Family Services (the Department) to provide the parents with reunification services while they were in jail awaiting trial on murder charges.  At the six-month, 12-month, and 18-month status review hearings, the juvenile court found that the Department made "reasonable efforts" in providing those services.  Mother and father purport to appeal the finding made at the 12-month status review hearing,[1] but due to appealability

---

[1]    Mother separately appealed the finding made at the six-month review hearing and we consolidated that appeal with the parents' appeals from the finding made at the 12-month review

2

questions, we construe their appeals as petitions for a writ of mandate. We conclude that those petitions are moot and without merit. Accordingly, we deny the petitions.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Mother and father have two children together—namely, Zachary P. (born October 2015) and Zoey P. (born March 2017).

The parents have a history of engaging in violent altercations in front of Zachary and Zoey. In the presence of the children, father has struck mother and has used derogatory, threatening, and aggressive language. One of those incidents resulted in a criminal conviction for domestic violence.

On August 17, 2020, mother and father were arrested for murder. Father was charged for stabbing a man to death, and mother was charged for assisting father by driving him to and from the attack.

### II.   Procedural Background

#### A.    *Assertion of dependency jurisdiction*

On August 19, 2020, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Zachary and Zoey based on (1) the parents' history of domestic violence (rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)),[2] and

---

hearing, but mother waived any attack on that finding by not arguing it in her opening brief in this consolidated matter. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707, fn. 4; *People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26.)

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

(2) the parents' pending murder charges (rendering jurisdiction appropriate under section 300, subdivision (b)(1)).

On November 2, 2020, the juvenile court found jurisdiction appropriate on those grounds,[3] removed Zachary and Zoey from their parents, and placed them with their paternal aunt (in whose custody they had been since October 23, 2020). The court also created a "case plan" for each parent that required them to (1) complete parenting classes, (2) participate in individual counseling, and (3) have monitored visitation with the children.[4]

### B.    *Six-month review (November 2020 to May 2021)*

#### 1.    *Case plan progress*

From November 2020 to May 2021, mother and father remained incarcerated pending their criminal trials.

During that timeframe, the jails where mother and father were housed had suspended all programming, whether in-person or virtual, due to Covid-19 restrictions. A Department social worker called the jails in February 2021 and again in March 2021, and was informed by a deputy that no classes were being offered, even if required by the court. The jails also limited any visits to only the inmates' attorneys. When the social worker inquired if the deputy could tell mother and father to call the

---

[3]    The juvenile court rejected additional allegations (1) for placing the children in danger due to the murder itself (under section 300, subdivision (a)), and (2) for the parents' alleged substance abuse (under section 300, subdivision (b)(1)).

[4]    Mother appealed from the jurisdictional and dispositional orders, and we dismissed her appeal as abandoned, in accordance with *In re Phoenix H.* (2009) 47 Cal.4th 835, after counsel was unable to identify any arguable issues and mother failed to file a supplemental brief.

4

social worker, the deputy refused, explaining that jail staff are not allowed to forward messages to inmates.

After the limitations on in-person visits were lifted, the social worker finally was able to visit mother and father in person in April 2021. The social worker provided each parent with the minute orders from all of the juvenile court proceedings and with their respective case plans, and explained to them the Department's role and responsibilities in the case. The social worker spent one hour with mother specifically discussing the details of the case.

Also during this timeframe, Zachary and Zoey had regular phone calls with mother and father that, while brief, occurred at least once every week.

### 2. *Hearing and appeal*

The juvenile court held a six-month status review hearing on May 3, 2021. The court found, by clear and convincing evidence, that the Department had complied with the parents' case plans by "making reasonable and/or active efforts to provide or offer reasonable services." The court also found that the parents' participation in those services had "not been substantial due to limited or no services available in location of incarceration due to COVID." The court continued reunification services for mother and father for six months.

### C. *12-month review (May 2021 to August 2021)*

#### 1. *Case plan progress*

From May 2021 to August 2021, mother and father remained incarcerated pending trial, with no plea bargain expected because "neither parent seem[ed] to want to cooperate" and with trial expected to last many months and possibly resulting "in a long sentence" for each parent.

5

During that timeframe, the Department social worker repeatedly attempted to get information from the jails where mother and father were housed regarding the programming then being offered at those facilities. But it was not until June 2021, when the social worker's in-person visit with mother was thwarted by a lockdown in the jail, that the worker succeeded. She learned that the jails had started to offer parenting classes but not individual counseling (because such counseling was limited to mental health counseling). She also learned that the process for signing up for those classes had changed: Instead of social workers arranging with the jail for the parent-inmates to attend classes, the inmates were informed "all the time" of available classes and how to sign up, and were expected to sign themselves up.

In August 2021, the social worker spoke with the deputy regarding which classes mother and father had completed, and what alternative options the jails were offering to inmates to complete court-ordered services. Father had completed five high school independent studies classes, but no parenting classes. Because father completed some classes, it was clear father was aware of how to sign up for classes. Mother had not signed up for any services. Mother was not in a module (that is, a housing unit) where classes were offered, but mother had been informed of how to switch to a different module that offered classes and opted not to do so. What is more, mother had recently received a disciplinary write-up and was temporarily ineligible to sign up for classes.

Also during this timeframe, Zachary and Zoey maintained weekly telephonic visits with their parents. They had in-person visits twice with father in June and July 2021 and once with

mother in June 2021.  More frequent in-person visits were difficult for the paternal aunt because the jails' visitation schedules were limited, because the jails were too far apart for her to visit both parents' jails in a single day, because paternal aunt worked, and because the children were attending school.  The paternal aunt also felt concerned over the children's potential exposure to Covid-19 during jail visits.

### 2. Hearing and appeals

The juvenile court held a 12-month status review hearing over two days—namely, on August 25, 2021, and September 2, 2021.  Although the court initially announced that its tentative ruling "was going to be a no reasonable efforts finding," the court ultimately found that "the Department did make reasonable efforts to assist this family with reunification services."  The court also found that the parents' participation in those services had "not been substantial."  The court nevertheless continued reunification services for mother and father another six months.  The court also ordered the Department to check with the jails monthly regarding how services were being offered and to assist the paternal aunt with arranging more in-person visits.

Mother and father both appealed the juvenile court's finding that the Department made "reasonable efforts" to provide them with reunification services.

### E. Postappeal events[5]

The juvenile court held an 18-month status review hearing on March 21, 2022, while this appeal was pending.  The court

---

[5] Over mother's objection, we grant the Department's requests for judicial notice and, on our own, take judicial notice of these postappeal proceedings.  (Evid. Code, §§ 452, subd. (d); 459, subd. (a).)

found that the Department had made "reasonable and/or active effort" to provide reunification services to mother and father during this most recent six-month period, but that their progress was "only partial." The court terminated reunification services and set a permanency planning hearing for September 19, 2022. Mother and father filed notices of intent to file petitions for writ of mandate, but we deemed the matter nonoperative after counsel filed letters pursuant to *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570 and the parents failed to file supplemental briefs.

A permanent plan of placement in foster care leading to adoption was ordered at the hearing. However, mother was recently released from custody, was granted visitation with the children, and filed a petition under section 388 in December 2022. On January 12, 2023, the juvenile court granted mother's petition and reinstated family reunification services for mother.

## DISCUSSION

Because, as noted above, mother has not argued any defects with the juvenile court's findings from the six-month status review hearing, the sole issue before us is the parents' challenge to the juvenile court's finding—at the 12-month status review hearing—that the Department made "reasonable efforts" to provide reasonable reunification services.

This appeal consequently boils down to three questions: (1) is this appeal properly before us, (2) is the parents' challenge moot, and (3) does the parents' challenge have merit?

We need not decide whether the parents' challenge is properly before us on appeal. The Department urges it is not, arguing that an appeal directed solely at a juvenile court's "reasonable efforts" finding is not properly appealable. (See

8

*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1153-1156 [no appeal "from the isolated finding" that reasonable reunification services were provided where juvenile court "took no action adverse" to parent based on reasonable services finding].) The parents argue that an appeal is proper. (See *In re T.G.* (2010) 188 Cal.App.4th 687, 692-695 [reasonable services finding appealable where "interrelated" with other review hearing findings and the appellate court cannot "say for certain that no negative consequences flowed from [that] finding"]; see generally § 395, subd. (a)(1) [appealability of juvenile court orders and judgments].) We need not resolve this issue because both cases agree that we may construe the parents' challenge as a petition for a writ of mandate (*Melinda K.*, at pp. 1153, 1157), and we elect to do so here.

## I. Mootness

Mother's and father's challenge to the "reasonable efforts" finding made by the juvenile court at the 12-month status review hearing is moot. An issue is moot where, as here, the court cannot grant effective relief. (*In re D.P.* (Jan. 19, 2023, S267429) __ Cal.5th __ [pp. 11-12] [2023 Cal. Lexis 131] (*D.P.*); *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055 (*Esperanza C.*) [issue is moot when "the occurrence of an event renders it impossible for the appellate court to grant . . . effective relief"].)

Here, we cannot grant the parents any effective relief, even if we were to agree with them that the juvenile court's finding of "reasonable efforts" at the 12-month status review hearing was incorrect. That is because the remedy for a failure to make "reasonable efforts" in providing reunification services to a parent is "to provide an additional period of reunification services to that parent" equal to the statutory minimum period. (*In re A.G.*

9

(2017) 12 Cal.App.5th 994, 1005 (*A.G.*); accord, *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1256 (*T.J.*).)  For a child over the age of three, the statutory minimum period of reunification services is 12 months.  (§ 361.5, subd. (a)(1)(A).)  Because the parents do not challenge the reasonableness of the Department's efforts during the first six-month period and the 12- to 18-month period, mother and father have already obtained the relief they would obtain if we determined that the Department's efforts during the midpoint six- to 12-month period were less than reasonable—that is, they received a total of the statutory minimum 12 months of reunification services (and mother is now receiving an additional period of reunification services).  Although the remedy for unreasonable efforts also includes striking the juvenile court's finding of reasonable efforts (*A.G.*, at p. 1005), the continued existence of an improper finding of reasonable efforts at the 12-month status review hearing has no effect on the issue of whether the Department made reasonable efforts during the *prior* or *next* review period; to hold otherwise would mean that the Department's efforts, once unreasonable, could never be reasonable.  As a result, whether we leave the finding of reasonable efforts made at the 12-month review hearing intact or strike it has no effect.  The issue is still moot.  (*D.P.*, *supra*, __ Cal.5th __ [pp. 11]; *Esperanza C.*, *supra*, 165 Cal.App.4th at pp. 1054-1055 [issue is moot if appellate court's decision "would [not] affect the outcome of the case in a subsequent proceeding"].)  In her reply brief, mother argues that her challenge to the finding of reasonable efforts made at the 12-month review hearing is not moot because, if that finding is found to be incorrect, the court may not "terminate [her] parental rights."  (§ 366.26, subd. (c)(2)(A).)  Although we disagree with

10

mother's argument that this statute requires a finding of reasonable efforts at every status review hearing (because such a reading would preclude termination of parental rights even if an agency rectifies its earlier, unreasonable efforts), we need not definitely resolve this interpretation issue because the juvenile court here did not terminate mother's parental rights and, in fact, started a new period of reunification services upon her release from incarceration; on this record, mother's argument is based on speculation when it appears that any termination of her parental rights would be as a result of her performance during this reinstated period of reunification, not based upon the prior finding.

## II.    Reasonable Efforts

Even if we ignore the mootness of the parents' petitions, the parents' challenge lacks merit. (*D.P.*, *supra*, __ Cal.5th __ [p. 24] ["Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute"].)

### A.    *Governing law*

Where, as here, a child is removed from his parent during a dependency proceeding, the juvenile court in most cases is required to "order the social worker"—here, the Department—to provide reunification services to the child and parent. (§ 361.5, subd. (a); see also § 362, subd. (d).) To effectuate this mandate, the court will set forth the services that must be provided to the parent in a "case plan." The court is thereafter required to hold periodic status review hearings—typically, at six and 12 months (and, in some cases, 18 months) after the dispositional hearing—and, at those review hearings, assess "[t]he extent of the" Department's "compliance with the case plan." (§§ 366, subd. (a)(1)(B), 366.21, subds. (e)(8) [six-month hearing], (f)(1) [12-

11

month hearing].)  A court may not keep a removal order in effect and may not terminate a parent's reunification services unless it finds, in most cases by clear and convincing evidence, that the Department has provided the "reasonable services" previously ordered by the court.  (§ 366.21, subd. (e)(8); *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594, 596-597*; Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 (*Robin V.*).)  In other words, "in order to meet due process requirements at the termination stage, the court must be satisfied reasonable services have been offered during the reunification stage."  (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1215-1216.)

An agency provides "reasonable services" when it "offer[s] services designed to remedy" the problems identified in the parent's case plan, "maintain[s] reasonable contact with the parent[] during the course of the . . . plan," and makes "reasonable efforts to assist the parent[] in areas where compliance proved difficult."  (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics omitted; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)  "Reasonable efforts" are "good faith" efforts that are "reasonable under the circumstances."  (*Robin V.*, *supra*, 33 Cal.App.4th at pp. 1164, 1166; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 254; *T.J.*, *supra*, 21 Cal.App.5th at p. 1240.)  To be reasonable, the efforts need not be ideal or perfect (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972), and the Department need not "force a parent to participate in [the offered] services."  (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233.)

The Department is not relieved of its obligation to make reasonable efforts to provide reunification services merely because a parent is incarcerated.  Incarceration itself does not disqualify a parent from services (*Mark N. v. Superior Court*

12

(1998) 60 Cal.App.4th 996, 1011-1012 (*Mark N.*)), and "[t]here is no 'Go to jail, lose your child' rule in California" (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077).[6] However, the Department's duties to an incarcerated parent necessarily reflect the reality of that parent's situation. Thus, exerting "reasonable efforts" for an incarcerated parent means (1) "maintain[ing] reasonable contact" with the parent (*Mark N.*, at p. 1012); (2) assisting the parent with accessing services by (a) "notify[ing] the prison [that] an incarcerated parent is in need of reunification services" (*id.* at p. 1013); (b) "preliminarily" "determin[ing] whether any appropriate services" are "available to an incarcerated parent" "at the particular institution in question" (*id.* at pp. 1012-1013; *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1502); and (c) "explor[ing] whether changes in the housing of the parent prisoner can be made to facilitate the provision of such services" (*Mark N.*, at p. 1014); and (3) providing visitation services, including "[m]aintaining contact between the parent and child through collect telephone calls" and "[t]ransportation services" (§ 361.5, subd. (e)(1)).

In reviewing a juvenile court's finding that the Department made "reasonable efforts," we apply the substantial evidence standard and ask whether the record—construed in the light most favorable to that finding (and hence without reweighing the evidence)—constitutes clear and convincing evidence capable of

---

**6** Where a parent is incarcerated pursuant to a criminal conviction, the juvenile court may not automatically deny all reunification services but has discretion to do so on that basis after considering various factors. (§ 361.5, subd. (e)(1); compare § 361.5, subd. (e)(4) [amendment effective January 1, 2023, providing that no such discretion exists for parents incarcerated prior to conviction].)

13

supporting that finding. (*T.J.*, *supra*, 21 Cal.App.5th at pp. 1238-1239; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010-1012; *In re M.F.* (2019) 32 Cal.App.5th 1, 14 (*M.F.*)).

### B.     *Analysis*

Substantial evidence supports the juvenile court's finding that, between the 6- and 12-month status review hearings, the Department made reasonable efforts to provide mother and father with reunification services under the above-stated standard.

The Department made good faith efforts to maintain reasonable contact with the parents. The social worker met with them in-person during the initial six-month period of services (in April 2021) once the jails' restrictions on visits were lifted, and tried to visit mother again (in June 2021), but her jail was on lockdown. Because the Department had no basis to dispute the jailhouse deputy's report that mother and father had all the information they needed regarding available services and how to sign up, it was not unreasonable for the social worker not to insist upon further in-person meetings in order to provide them with information they already had. Thus, we reject the parents' argument that the Department's contact with them was inadequate.

The Department also made good faith efforts to assist mother and father with accessing services. Although prior cases have defined a department's duties to include arranging for inmates' enrollment in services (*Mark N.*, *supra*, 60 Cal.App.4th at pp. 1012-1013; cf. *In re Monica C.* (1995) 31 Cal.App.4th 296, 307-308 [agency "unreasonably . . . delegat[ed] to [parent] the responsibility of sending her case worker a list of available services in prison," which "has the appearance of a trap"]), it is

undisputed that the jails had altered their procedures to *prohibit* social workers from arranging enrollment and to *require* the inmates to do so themselves.  Because a department "cannot tell prison officials how to run their institutions" (*Mark N.*, at p. 1013), the Department's failure to adhere to a prior set of duties that are no longer feasible does not render its efforts unreasonable.  The parents seem to suggest that the Department social worker was wrong to accept the jailhouse deputy's representations regarding the new procedures, but we are aware of no precedent that deems a department's efforts unreasonable for failing to disbelieve another government official or for failing to do an "end run" around that official.  What is more, we may reasonably infer from father's success in enrolling in high school independent studies classes that the deputy's representations were, in fact, correct.

The Department also made good faith efforts to ensure that monitored visitations occurred.  The paternal aunt saw to it that the children had weekly phone calls with the parents, had two in-person visits with father, and had one in-person visit with mother.  To be sure, the juvenile court at the 12-month status review ordered the Department to take a more active role in assisting with family visitation, but that does not mean that the Department's efforts in the prior status review period were unreasonable.  Mother and father argue that the Department's efforts were unreasonable because the Department relied on paternal aunt to arrange in-person visits.  But this argument ignores the steady telephonic visits as well as the realities of in-person prison visits during this status review window, when the parents' jails limited visits to one child at a time, when the paternal aunt who had custody of the children was holding down

15

a job, when the children were too young to visit on their own, when the children were in school, and when Covid-19 was a persistent threat in the jail environment (and no vaccines were available for children of Zachary's and Zoey's ages).

Mother and father make two further arguments.

First, they argue that the juvenile court impermissibly conflated the question of whether the Department made reasonable efforts with the separate question of whether reunification was likely (given the parents' potentially long prison sentences if convicted). Although those two inquiries are analytically distinct (e.g., *Mark N.*, *supra*, 60 Cal.App.4th at pp. 1013, 1014-1015 [reasonable reunification services must be offered despite "the prospects of success"]), and although the juvenile court did ask the parties to brief whether the parents' pending criminal cases had any bearing on the utility of services, the court ultimately did not base its finding that the Department made reasonable efforts on any likelihood of reunification.

Second, the parents argue that the facts here are similar to three cases in which it was held that a department failed to make reasonable efforts. The cases they cite are inapt. The first case, *M.F.*, *supra*, 32 Cal.App.5th 1, involved a minor's appeal from a finding that the parent had *not* been provided with reasonable services; because the appellate court in *M.F.* was obligated to uphold the finding of *unreasonable* efforts if any substantial evidence supported it (*id.* at p. 15), *M.F.* is unhelpful in a case, like this one, where the question is what must be done to uphold a finding of *reasonable* efforts. The second case, *A.G.*, *supra*, 12 Cal.App.5th 994, overturned a juvenile court's finding that the agency had made reasonable efforts, but the finding in that case rested on the parent's back-and-forth flip-flopping over whether

he wanted reunification services and on the court's view that the parent was to blame for the deportation to Mexico that rendered providing services more difficult. (*Id.* at p. 1002.) The juvenile court here did not rely on such impermissible considerations. The third case, *Mark N.*, *supra*, 60 Cal.App.4th 996, overturned a juvenile court's finding that the agency had made reasonable efforts, but the agency in that case had made no effort to contact the incarcerated parent for 13 months and had made no effort whatsoever to contact the place of incarceration to determine the availability of services. (*Id.* at pp. 1012-1013.) The Department in this case made multiple efforts to contact the parents (although many of those efforts were unsuccessful due to prison policies or lockdowns), and also repeatedly contacted the jails to learn what the parents must do to enroll in services.

## DISPOSITION

Having construed the parents' appeals as petitions for a writ of mandate, those petitions are denied.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

18