Filed 10/13/20  S.L. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| S.L.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>        Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>        Real Party in Interest. | F081476<br><br>(Super. Ct. No. 19JP-00004-A)<br><br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Donald J. Proietti, Judge.

S.L., in pro. per., for Petitioner.

No appearance for Respondent.

Forrest W. Hansen, County Counsel, and Jennifer Trimble, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]        Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

S.L. (mother) seeks an extraordinary writ from the juvenile court's orders issued at a contested 18-month review hearing (Welf. & Inst. Code, § 366.22)[1] terminating her reunification services and setting a section 366.26 hearing on November 5, 2020, as to her now 21-month-old son, Casey L. The juvenile court terminated reunification services for Casey's father, Kevin L. (father), at the six-month review hearing in October 2019. Father did not file a writ petition.[2]

Mother seeks Casey's return to her custody and continued reunification services. However, she fails to assert juvenile court error. Consequently, we conclude mother's writ petition fails to comply with the content requirements of California Rules of Court, rule 8.452[3] and dismiss it as facially inadequate for appellate review.

## PROCEDURAL AND FACTUAL SUMMARY

Newborn Casey was taken into protective custody in January 2019 by the Merced County Human Services Agency (agency) after he tested positive for amphetamine and methamphetamine at high levels. Mother admitted using methamphetamine and alcohol during her pregnancy, but alcohol was her drug of choice. She drank rum and soda daily for the first six months of her pregnancy and suspected alcohol was a problem for her. She was unable to stop drinking but limited herself to one glass of rum and soda a day.

Mother and father were married. Father had a criminal history, including convictions for possession of a controlled substance and possession of a controlled substance for sale. He also had child welfare cases in Santa Clara County involving domestic violence and substance abuse, which resulted in the removal of two of his children and the termination of his parental rights.

---

[1]    Statutory references are to the Welfare and Institutions Code.

[2]    Nor did he appeal from the juvenile court's orders and findings issued at the six-month review hearing.

[3]    Rule references are to the California Rules of Court.

2.

The agency filed an original dependency petition on Casey's behalf under section 300, subdivisions (b), (g) and (j) and placed Casey in foster care. The juvenile court ordered Casey detained pursuant to the petition and set the jurisdictional hearing for February 7, 2019. The jurisdictional and dispositional hearings were combined and conducted as a contested hearing on March 19, 2019.

Meanwhile, on January 24, 2019, mother checked herself into the Rose Julia Riordan Tranquility Village (Tranquility Village) for substance abuse treatment but left after six days. On February 20, 2019, she completed a substance abuse assessment through Merced County Behavioral Health. Her treatment plan required her to attend class two days a week and drug test three days a week. She also enrolled in a domestic violence program and a parenting class. On February 22 and 28, mother tested positive for alcohol and on March 13, she tested positive for amphetamine, methamphetamine and ecstasy.

Mother testified at the contested jurisdictional/dispositional hearing on March 19, 2019, and did not object to the juvenile court exercising jurisdiction but asked to have Casey placed in her custody under family maintenance. The juvenile court adjudged Casey a dependent child under section 300, subdivisions (b) and (j), removed him from parental custody and ordered reunification services for the parents. Mother's reunification plan required her to complete a parenting class, substance abuse and domestic violence assessments and any recommended treatment, submit to random drug and alcohol testing and attend Alcoholics Anonymous meetings.

Mother successfully completed programs in parenting and domestic violence in May and June 2019, respectively. However, she continued to struggle with sobriety. Each month from April to June 2019, she was asked to submit to a hair follicle and urinalysis screening but did not comply. In July, however, she submitted to both methods of testing and tested positive for amphetamine and methamphetamine. She admitted relapsing after father was released from jail in June. On July 22, 2019, she signed the

3.

Dependency Drug Treatment Court (DDTC) contract. After she failed to attend the DDTC and attempted to falsify a drug test in August 2019, her counselor recommended she participate in residential drug treatment. On August 26, 2019, mother entered Tranquility Village for substance abuse treatment. She graduated the program on October 19 and had the opportunity to remain at Tranquility Village but decided to leave the program and live in the community. She returned to the DDTC and was testing negative.

The agency recommended the juvenile court continue reunification services for mother at the six-month review hearing but terminate father's services for noncompliance.

Mother objected to the agency's recommendation and argued for Casey's return to her custody under family maintenance at the contested six-month review hearing on October 22, 2019. She testified she was participating in the DDTC, completed a 33-day sober living program and was testing negative for drugs. She claimed 89 days of abstinence from alcohol and 69 from methamphetamine. She admitted using methamphetamine with father in July. She filed for divorce but had not filed for a restraining order against father, even though he was harassing her.

The juvenile court found it would be detrimental to return Casey to mother's custody, stating:

> "[Y]ou've used meth and alcohol for a substantial period of your life. And to expect that—being tested in July, as recently as July, and being positive for meth, that you are in a place that would be safe is hard to accept, given the fact that you've acknowledged that your trigger—or at least one of your triggers is Kevin, and you have not demonstrated any resolve in keeping him away from you, other than by avoidance but not by a restraining order. Given the history of domestic violence, it would seem necessary and important for you to consider that to protect not only yourself but your child."

4.

The juvenile court also found mother made minimal progress and there was a substantial probability Casey could be returned to her custody, continued reunification services for her and set the 12-month review hearing for February 20, 2020. The court terminated services for father.

In November 2019, mother tested positive for alcohol. The DDTC revoked her clean time and ordered her to attend weekly court hearings. In January 2020, mother missed group sessions and failed to submit to urinalysis 13 times. She submitted a hair follicle in January for testing and the results were positive for methamphetamine. She told her social worker, Rosalva Moreno, who was also the DDTC social worker, that she was "trying to get away with anything that she could." She told the DDTC judge she was self-sabotaging her recovery. On February 7, mother entered a sober living facility but left on February 13 after testing positive for methamphetamine.

The 12-month review hearing scheduled for February 20, 2020, was continued to March 5 to allow the agency to file an updated report. In its report for the hearing, the department recommended the juvenile court terminate mother's reunification services.

On March 5, 2020, the juvenile court set a contested 12-month review hearing, which was continued for various reasons, including the statewide shut down for the COVID-19 pandemic, and ultimately set as a contested, combined 12- and 18-month review hearing for July 21, 2020 (contested review hearing).

Prior to the contested review hearing, the agency filed an 18-month review report, reiterating its recommendation the juvenile court terminate mother's reunification services. Although mother made progress in the domestic violence component of her case plan, obtained a restraining order against father and regularly visited Casey, she had been unable to maintain sobriety for longer than two months during the 18 months of reunification efforts. Since its last report, mother tested negative by hair follicle and urinalysis in April 2020 but was asked twice in May to submit to urinalysis and did not, explaining she was out of the county visiting family and was not able to make it back in

time before the testing center closed. She submitted hair and urine samples in June 2020 and tested negative.

In a letter dated July 15, 2020, Shannon Wight, mother's substance abuse counselor at DDTC, stated mother had "put a tremendous amount of effort into committing herself to her personal program of recovery and is addressing specific behaviors that are the most difficult to change in early recovery." Once mother began practicing complete honesty, she made outstanding progress in her treatment program and Wight witnessed many positive changes in her since she began the program. Wight recommended mother be allowed to continue in the DDTC given her measurable progress.

The juvenile court conducted the contested review hearing on July 21 and 23, 2020. Mother testified she last tested positive for methamphetamine on February 6, 2020. Since the pandemic, she was testing for drugs and alcohol by hair follicle and urinalysis at her own expense and testing negative. Although she completed nine of the 12 steps, she started over and had been working on step one since December 2019. She did not have a sponsor.

Mother believed Moreno's presence in the DDTC inhibited her recovery because it prevented her from being honest before the dependency drug court judge. She thought it unfair that Moreno disclosed her statement she sabotaged herself to the juvenile dependency court. Mother also found Moreno unhelpful. Moreno did not respond to her many texts and knew she did not have a vehicle and was missing classes. Moreno could have helped her obtain government funded housing so she could live in Merced. She also believed Moreno could have increased visitation in September 2019 when she was at Tranquility Village and making progress.

Mother believed she could finish DDTC within the next month or so. She was employed and living in a house in Chowchilla where Casey could live with her.

6.

Social worker Angeline Bettis testified she was assigned as the DDTC social worker in January 2019 when mother was referred to the DDTC.  She was not able to enroll mother in the DDTC until the juvenile court ordered family reunification services for her.  She explained that social workers for the agency who have clients in the DDTC have access to their client's progress in the DDTC.  Bettis had specialized training in recognizing whether a person is under the influence of drugs.  She observed mother testify and noticed she displayed symptoms consistent with someone who was under the influence of methamphetamine.  She identified those behaviors and stated mother displayed "all of them."  She could not verify, however, that mother was under the influence of anything and agreed there were several reasons why a person might be fidgety.

Moreno testified the DDTC ceased to operate on March 13, 2020, because of the pandemic.  DDTC clients were not tested through Behavioral Health and Recovery Services in Merced County.  However, their social workers were still able to send test referrals to the laboratory.  The DDTC reopened in early June 2020.  Moreno asked mother to test on May 7 and May 11.  Mother said she was in Apple Valley on May 7 and on her way back to town on May 11.  Neither Moreno nor the agency was provided the results of any of the drug tests paid for by mother.  Mother attended her sessions at the DDTC since June 5, although she missed a court session the Friday before the hearing.  Moreno said mother would need to complete 30 days in phase one of the DDTC and 30 days in aftercare to graduate.  Moreno did not believe her presence in DDTC prevented mother from being honest in her recovery.  It was standard practice for DDTC and agency social workers to share information about clients.

Moreno testified mother's once weekly visits with Casey were increased from one to two hours at some point.  In January 2020, the agency was considering weekend visitation until it received a progress report from Wight stating that mother missed 13 random tests.  Mother regularly visited Casey and the visits went well.

Mother's attorney recalled her to ask about her visit with Casey the day before. Mother was stung by a bee and texted her attorney, stating her hand was swelling and she took an antihistamine.

Mother's attorney asked the juvenile court to find mother was denied reasonable reunification services between March and June 2020 when the DDTC was not holding sessions. Given that gap in services as well as mother's regular visitation and progress in completing the DDTC, she asked the court to find exceptional circumstances to extend services for mother beyond the 18-month review hearing. Counsel for the agency opposed continuing services for mother, pointing out that the recommendation was to terminate mother's services at the 12-month review, and she did not satisfy any of the exceptions that would justify continuing her services. Minor's counsel joined in the arguments of counsel for the agency.

The juvenile court found Casey could not be returned to mother's custody without exposing him to a substantial risk of detriment. The court considered the fact that Casey had not been in mother's care since birth as well as the extensiveness of her drug addiction and failure to maintain sobriety. The court stated, "The evidence is clear, given the long history of drug addiction, the relapse, the deceit, the attempt to falsify testing, … [and] the failure to test on multiple, many, many occasions …."

The juvenile court also found mother was provided reasonable reunification services but failed to comply, stating:

> "[T]he totality of the evidence supports by clear and convincing evidence that reasonable services for [mother's] addiction were offered, and at times they were accepted, at times they were rejected, and other times [mother] self-admitted she was trying to game the system and find out how much she could gain or avoid by not participating…. [¶] … [¶] And even at the 12-month period, when we really should have been at the point for a child under 3 to either reunify or terminate, she was still gaming the system."

In assessing mother's compliance, the juvenile court considered the impact of COVID-19 and concluded she could have demonstrated she was making progress even

without access to the DDTC, but did not, noting that she had the opportunity to drug test twice in May but did not make herself available.

Finally, the juvenile court found none of the exceptions that would allow it to extend mother's reunification services beyond 18 months applied, there was not a substantial probability Casey could be returned to mother's custody and it was not in Casey's best interest to provide her additional time to reunify.

The juvenile court terminated reunification services and set a section 366.26 hearing. On July 24, 2020, mother was terminated from the DDTC.

## DISCUSSION

*Mother's Writ Petition is Facially Inadequate for Appellate Review*

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the juvenile court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).) In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother failed to assert any error on the part of the juvenile court. She completed those sections of the JV-825 requiring identifying information and checked the

boxes indicating she wants the section 366.26 hearing vacated, an order for continued reunification services, Casey's return to her custody and a stay of the section 366.26 hearing pending our review of her writ petition. However, she left blank the space designated on the writ petition to identify the grounds on which the juvenile court erred. Further, none of the various documents attached contain points and authorities and with one exception, mother's DDTC contract, they are not part of the appellate record. Therefore, they were not before the juvenile court and we cannot review them. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

We conclude mother's failure to comply with rule 8.452 by asserting juvenile court error renders her writ petition inadequate for review. Further, even if we were to review mother's writ petition for possible errors, we would find none.

*Substantial Evidence Supports the Juvenile Court's Findings and Orders*

By the time a dependency case reaches the 18-month status review hearing, the juvenile court has few options. The court must either return the child to parental custody or set a section 366.26 hearing to select a permanent plan. The court may continue reunification services to the 24-month review hearing but only under very specific circumstances.

The juvenile court must return the child to parental custody at the 18-month review hearing unless it finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).) "In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services. [Citations.] The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.) A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs constitutes

prima facie evidence that return would be detrimental.  (§ 366.21, subd. (e)(1).)  Here, mother's inability to maintain sobriety was prima facie evidence of detriment.

If the court finds it would be detrimental to return the child, it must set a hearing under section 366.26 to select a permanent plan.  (§ 366.22, subd. (a)(3).) Section 366.22, subdivision (b), however, allows the juvenile court to continue reunification services beyond 18 months under exceptional circumstances.  To qualify, the parent must be a resident of a court-ordered substance abuse treatment program; or recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security; or a minor or nonminor dependent at the time of the initial hearing.  The court must also find the parent is making significant and consistent progress, there is a substantial probability the child will be returned to parental custody, and it is in the child's best interest to continue reunification efforts.  Under those circumstances, the court may continue services up to 24 months from the date the child was initially removed from parental custody.  (§ 366.22, subd. (b).)  Mother does not fall within any of the exceptions.

Another possible exception that would allow the juvenile court to continue reunification services beyond the 18-month review hearing is when the court finds the parent was never provided reasonable reunification services.  (*In re M.F.* (2019) 32 Cal.App.5th 1, 21.)  Mother was provided 18 months of reunification services, the most important of which was substance abuse treatment.

Although substantial evidence would support the juvenile court's findings and orders, we dismiss mother's writ petition because it fails to comport with rule 8.452.

## DISPOSITION

The petition for extraordinary writ is dismissed.  This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).  The request for a stay of the section 366.26 hearing is denied.

11.