# IN THE SUPREME COURT OF CALIFORNIA

MICHAEL G. et al.,
Petitioners,

v.

THE SUPERIOR COURT OF ORANGE COUNTY,
Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,
Real Parties in Interest.

S271809

Fourth Appellate District, Division Three
G060407

Orange County Superior Court
19DP1381

April 6, 2023

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

MICHAEL G. v. SUPERIOR COURT
S271809


Opinion of the Court by Kruger, J.


Under California's child dependency law, when a child is removed from a parent's custody, the juvenile court ordinarily must order reunification services to help the parent address the conditions that led to the child's removal. Reasonable reunification services must be offered to qualifying parents for a minimum period of six or 12 months, depending on the age of the child, and generally may be extended for up to a maximum total period of 18 months. This statutory timeline is designed to achieve a delicate balance between families' interests in reunifying and children's interests in avoiding protracted uncertainty about who will care for them.

The question in this case is whether a juvenile court is automatically required to grant a further extension of services if it finds that reasonable services were not provided during the 12- to 18-month extension period. Under the governing statutes, the answer is no. Once a child has been out of the parent's custody for 18 months, the law ordinarily requires the court to proceed to set a hearing to determine a permanent plan for the child's care. A parent who has not received reasonable services may seek an extension of services beyond 18 months, but such extensions are not automatic: In addition to ensuring other statutory conditions are met, the juvenile court must consider the child's interests in deciding whether the extension, and consequent delay to the child's permanent placement, is warranted. (Welf. & Inst. Code, §§ 366.22, subd. (b), 352.)

1

We affirm the judgment of the Court of Appeal, which reached the same conclusion.

## I.

This case arises from dependency proceedings involving the minor A.G. At the start of the proceedings, A.G. was 14 years old and living in the care of her father (Father).[1] In a dependency petition filed under Welfare and Institutions Code section 300, the Orange County Social Services Agency (Agency) alleged that Father suffered from unresolved mental health issues that sometimes manifested in violent behavior. After determining that Father's delusions and paranoia put A.G. at risk of serious harm, the juvenile court assumed jurisdiction over A.G. and ordered that she be removed from Father's custody. The court directed the Agency to provide Father with reunification services and mandated a psychological evaluation.

At the six-month hearing, the Agency reported that Father had received his case plan several months earlier but had yet to sign the plan or engage in the recommended services, which included parenting classes and individual counseling. Father also resisted completing a psychological evaluation. Father attempted to keep in touch with A.G. via periodic phone calls, but she was reluctant to communicate until he received mental health services. Given this information, the juvenile court found that Father had been offered reasonable services but had made minimal progress in mitigating the circumstances that had led to the juvenile court's intervention. The court concluded that

---

[1] A.G.'s mother participated in the juvenile court proceedings, but she is not involved in the proceedings in this court. We therefore limit our description of the facts to those involving Father.

returning A.G. to Father "would create [a] substantial risk of detriment to [her] safety, protection, or physical or emotional well-being" and continued the case. (See Welf. & Inst. Code, § 366.21, subd. (e)(1).)

At the 12-month hearing, the Agency reported that Father had made moderate progress since the last hearing: He had signed the case plan, begun individual counseling, and completed parenting classes. He had also completed his psychological evaluation. The Agency reported that Father was eager to increase communication with A.G., and the parties established a schedule for regular phone calls. While the Agency believed returning A.G. to Father's custody still presented a substantial risk of detriment to her well-being, it recommended continuing the case to the 18-month review because "there [wa]s a substantial probability that the child w[ould] be returned to the physical custody of her parent" by then. (See Welf. & Inst. Code, § 366.21, subds. (f), (g)(1).) The court agreed to the extension, finding that the Agency had provided reasonable services to Father and that Father had now made moderate progress in alleviating the causes leading to A.G.'s removal.

At the 18-month hearing, however, the Agency reported that returning A.G. to Father's custody still presented a substantial risk of detriment to her well-being. The Agency noted that Father was not returning calls from his social worker and had abruptly moved out of state without advance notice. Father had also informed his psychological evaluator that he would not consent to continued mental health services because they interfered with his religious beliefs. The Agency recommended that the court end reunification efforts and schedule a permanency planning hearing under Welfare and Institutions Code section 366.26 (section 366.26) so that A.G.

could be permanently placed with her older brother and adult family friend, with whom she had been staying since she was removed from Father's custody.

Father contested the Agency's recommendation. He argued that he had completed all aspects of his case plan, including his psychological evaluation, but the social worker assigned to his case had not obtained or reviewed his evaluation report in a timely fashion, facilitated visitation with A.G., or contacted him about further mental health services. Father asked the court to find that the Agency had not offered or provided reasonable reunification services during the most recent extension period, exercise its discretion to continue the case and to extend reunification services, and wait to set a section 366.26 hearing where A.G.'s permanent placement would be decided.

The court found that while the Agency had provided reasonable services for the first 12 months of reunification, it had not provided reasonable services in the period between the 12- and 18-month hearings. The court was, in particular, troubled by the Agency's failure to timely consider the report of Father's psychological evaluation, once Father had finally consented to participate, and to offer Father appropriate mental health support. But while the court acknowledged that it could exercise discretion to continue the case and order more services, it declined to do so. Given Father's inconsistent visitation with A.G. and uneven progress over the past 18 months in addressing the causes that led to A.G.'s removal, the court found that additional services would neither be in A.G.'s best interests nor reasonably likely to lead to reunification. The court ended reunification services and scheduled a section 366.26 hearing.

Father filed a writ petition challenging the juvenile court's decision to terminate reunification services. He argued that he was entitled to an extension, given the court's determination that the services provided in the 12- to 18-month extension period were not reasonable. The Court of Appeal denied the petition. (*Michael G. v. Superior Court* (2021) 69 Cal.App.5th 1133, 1138 (*Michael G.*).) The Court of Appeal concluded that the juvenile court was not statutorily required to grant an extension of services. On the contrary, Welfare and Institutions Code section 366.22, subdivision (a)(3), which governs the conduct of the 18-month hearing, instructs that the juvenile court must set a permanency planning hearing if the child is not returned to the parent's custody at the 18-month hearing, regardless of whether reasonable services were provided in the most recent review period. (*Michael G.*, at p. 1143.) The Court of Appeal further held that the juvenile court did not abuse its discretion in denying a discretionary extension of services under Welfare and Institutions Code section 352 (section 352), given Father's "lack of consistent and regular contact and visitation," "lack of significant and consistent progress in the prior 18 months in resolving the problems that led to [A.G.]'s removal," and a "lack of evidence that [he] had demonstrated the capacity or the ability to complete the components of the case plan." (*Michael G.*, at p. 1145.)

As the Court of Appeal observed, some appellate courts have expressed uncertainty about the proper course of action when a court determines at the 18-month hearing that the parent did not receive reasonable reunification services during the 12- to 18-month extension period. (*Michael G.*, *supra*, 69 Cal.App.5th at p. 1143; see *In re M.F.* (2019) 32 Cal.App.5th 1, 21 [collecting cases]; *T.J. v. Superior Court* (2018) 21

Cal.App.5th 1229, 1251–1252 (*T.J.*); see also *J.C. v. Superior Court* (June 28, 2017, G054816) [nonpub. opn.], review den. Aug. 23, 2017, S243357 (stmt. of Liu, J.).) We granted review to address the issue.[2]

## II.

## A.

The purpose of California's dependency law is "to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (Welf. & Inst. Code, § 300.2, subd. (a).) In its effort to achieve this overarching goal, the law balances a number of vital interests: children's interests in safe and stable homes; parents' interests in raising their children; families' shared interests in each other's companionship; and the state's interest in protecting society's most vulnerable

---

[2] After the Court of Appeal decided *Michael G.*, *supra*, 69 Cal.App.5th 1133, the trial court held a permanency planning hearing under section 366.26, at which it set a permanent plan of legal guardianship for A.G. and ended dependency proceedings. The trial court did not, however, terminate parental rights, finding a "compelling reason for determining that termination would be detrimental to the child" under section 366.26, subdivision (c)(1)(B)(iv).

According to the Agency, "[n]o appeal has been taken from that October 2021 order, and it has thus become final," rendering this case "factually moot." We nonetheless exercise our "discretion to retain the case and decide it as one presenting issues of public importance, capable of repetition, yet tending to evade review." (*In re Caden C.* (2021) 11 Cal.5th 614, 629, fn. 3.)

members. (See, e.g., *In re Caden C.*, *supra*, 11 Cal.5th at p. 625; *In re Angelia P.* (1981) 28 Cal.3d 908, 919; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306.)

Dependency proceedings span up to four stages: jurisdiction, disposition, reunification, and permanency. (See *In re Matthew C.* (1993) 6 Cal.4th 386, 391; *In re Ethan C.* (2012) 54 Cal.4th 610, 624–626.) At the jurisdictional stage, the juvenile court determines whether to declare a child a dependent of the court because the child is suffering, or at risk of suffering, significant harm. (Welf. & Inst. Code, § 300.) At the dispositional stage, the court decides if the child can be returned to, or must be removed from, a parent's custody.[3] (Welf. & Inst. Code, §§ 315, 319.) During the reunification stage, qualifying parents are offered services to address the causes that led to the loss of custody. (*Id.*, § 361.5, subd. (a).) Finally, if the child cannot be safely returned to the parent within a statutorily specified timeframe, the juvenile court proceeds to the permanency stage, where it either terminates parental rights and places the child up for adoption or it selects another permanent plan, such as placement with a guardian or in long-term foster care. (§ 366.26.) Throughout the proceedings, the juvenile court is instructed to pay careful attention to the well-being of the child, the efforts of the parent, and the services provided by the state to ensure that cases proceed to this final stage only when necessary. (See *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253 (*Cynthia D.*).)

---

[3] Throughout this opinion, we use "parent" as a shorthand for "parent or guardian." (See *In re R.T.* (2017) 3 Cal.5th 622, 627, fn. 4.)

This case concerns the reunification stage. When a child has been removed from a parent's custody, the court ordinarily must order child welfare services designed to facilitate the reunification of the family. (Welf. & Inst. Code, §§ 361.5, subd. (a), 362, subds. (c), (d); see, e.g., *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 (*Tonya M.*).)[4] Such services may, depending on the case, include evaluations and assessments, counseling, parent education, substance abuse treatment and testing, and other forms of assistance. " 'Reunification services,' " we have explained, " 'implement "the law's strong preference for maintaining the family relationships if at all possible." ' " (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) This is because "services enable [parents] to demonstrate parental fitness and so regain custody of their dependent children." (*Ibid.*)

To balance the interest in family preservation with the child's interest in the prompt resolution of her custody status and long-term placement, the dependency law establishes a detailed timeline for reunification. For qualifying parents, the minimum length of reunification services depends on the age of the child at the time of removal. (Welf. & Inst. Code, § 361.5, subd. (a)(1).) Parents of children under three are presumptively eligible for at least six months of reunification services. (See *id.*, subd. (a)(1)(B).) Parents of children three or older are presumptively eligible for at least 12 months of services. (See

---

[4]     A narrow set of exceptions permit (and sometimes require) bypassing reunification services for certain parents, depending on the circumstances of the case. (Welf. & Inst. Code, § 361.5, subd. (b); see, e.g., *In re Christopher L.* (2022) 12 Cal.5th 1063, 1078.)

*id.*, subd. (a)(1)(A).)[5] Reunification services are ordinarily provided for a maximum of 18 months after a child has been removed from parental custody. (Welf. & Inst. Code, § 361.5, subd. (a); see *Tonya M.*, *supra*, 42 Cal.4th at p. 843.)

During the reunification stage, the juvenile court must hold periodic review hearings to evaluate the status of reunification efforts and appropriate next steps. (Welf. & Inst. Code, § 366.21.) These review hearings ordinarily take place at six-month intervals. At each review hearing, a court evaluates, among other things, the adequacy of the reunification services offered or provided and the extent of the parent's progress. If, at the six- or 12-month status review hearing, the court finds that there is a substantial probability the child may be returned to her parent within six months, or that reasonable services were not provided to the parent, the court extends reunification services for an additional six months rather than proceed to the final stage of dependency proceedings, permanency planning. (*Id.*, §§ 361.5, 366.21, subds. (e)(3) [for children under three], (g)(1), (2), (4) [for children ages three and over]; *Tonya M.*, *supra*, 42 Cal.4th at pp. 843, 845–846 [describing the timeline for reunification services and review hearings].) The court may schedule the section 366.26 permanency planning hearing "only if" it finds "there is clear and convincing evidence that reasonable services have been provided or offered to the parents or legal guardians." (Welf. & Inst. Code, § 366.21, subd. (g)(4).) In other words, at the six- and 12-month status hearings, the

---

[5] Parents of a sibling group that includes at least one child under three may be subject to a shorter presumptive timeline under specified conditions. (Welf. & Inst. Code, § 361.5, subd. (a)(1)(C).)

court must find that the parent has been provided or offered reasonable reunification services before the court can proceed to set a hearing to decide whether to terminate parental rights and select a permanent plan for the child.[6]

The statutory provisions governing the 18-month review hearing differ, however. (Welf. & Inst. Code, § 366.22, subd. (a).) At one time, the provision governing the 18-month review hearing, like the provision governing the six- and 12-month hearings, had expressly conditioned setting the permanency planning hearing on a determination that reasonable services had been offered or provided:

> "If the minor is not returned to a parent or guardian at the 18-month hearing and the court determines that reasonable services have been offered or provided to the parent or guardian, the court shall develop a permanent plan." (Stats. 1988, ch. 1075, § 5, p. 3471.)

But in 1991, the Legislature amended that language, deleting the conjunctive "and," and separating the directive to develop a permanent plan from the requirement to determine whether reasonable services have been offered or provided:

---

[6]     Although the statute does not define "reasonable services," the Courts of Appeal have generally held that, to support a finding that services were reasonable, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics omitted.) The Agency here does not challenge the juvenile court's conclusion that it failed to provide reasonable services, and we express no view on the subject.

"If the minor is not returned to a parent or guardian at the 18-month hearing, the court shall develop a permanent plan. . . . The court shall determine whether reasonable services have been offered or provided to the parent or guardian." (Stats. 1991, ch. 820, § 4, p. 3647.)

At the same time, the Legislature amended a different provision, section 366.26, which governs the conduct of the permanency planning hearing, to prohibit the termination of parental rights if, "at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." (Stats. 1991, ch. 820, § 5, p. 3649; see Stats. 2005, ch. 634, § 2, p. 4842 [shortening "each and every hearing" in this provision to "each hearing"; currently codified as § 366.26, subd. (c)(2)(A)].)

Nearly two decades later, the Legislature again amended Welfare and Institutions Code section 366.22 (section 366.22) to establish a narrow exception allowing certain parents who have faced specified barriers to reunification, such as recent incarceration, to receive an extension of services at the 18-month hearing if the court determines, among other things, that reasonable services had not been provided and that extending services is in the best interests of the child. (Stats. 2008, ch. 482, § 3, pp. 3440–3441 [currently codified as § 366.22, subd. (b)].)

## B.

The juvenile court in this case concluded at both the six- and 12-month hearings that Father had received reasonable reunification services. The court extended services past the applicable statutory minimum period of 12 months after finding

a substantial probability that the child would be returned to parental custody within the next six months. (Welf. & Inst. Code, § 366.21, subd. (g)(1).) But at the 18-month review hearing, the court found that the reunification services provided in the immediately preceding 12- to 18-month extension period were not reasonable. Father now argues that the court was therefore required to extend services — and delay permanency planning — for another six months. We conclude that while the dependency law does not categorically forbid courts from extending services past 18 months, neither does it require them to do so in every case in which they find reasonable services were not offered in the most recent review period. Rather, once a child has already been out of the parent's custody for 18 months, the law vests the juvenile court with responsibility for determining how to proceed after considering the circumstances of the case and the best interests of the child.

The provision governing the 18-month review, as amended, currently reads:

> "Unless the conditions in subdivision (b) are met and the child is not returned to a parent or legal guardian at the [18-month] hearing, the court shall order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption, . . . tribal customary adoption, guardianship, or continued placement in foster care is the most appropriate plan for the child. . . . The hearing shall be held no later than 120 days from the date of the [18-month] hearing. The court shall also order termination of reunification services to the parent or legal guardian. . . . The court shall determine by clear and convincing evidence whether reasonable services have been offered or

provided to the parent or legal guardian." (§ 366.22, subd. (a)(3).)

As both sides acknowledge, this provision imposes no express requirement that reunification services be extended beyond 18 months if the services offered or provided in the 12- to 18-month period were not reasonable. On the contrary, to promote the prompt resolution of the child's custody status and her permanent and stable placement, the law sets a presumptive 18-month limit on reunification services. As we have elsewhere explained, the time limit reflects a considered legislative choice: "[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308.) If the child has already been out of the parent's custody for 18 months and still cannot be safely returned, the statute instructs that the court ordinarily must proceed to schedule a permanency planning hearing under section 366.26, at which the court decides whether to terminate parental rights and place the child for adoption or else select another permanent plan. (§ 366.22, subd. (a)(3); see Welf. & Inst. Code, § 15 [" 'Shall' is mandatory and 'may' is permissive"].)

Section 366.22 does set out an exception to this general rule. As added by the 2008 amendments and since modified by subsequent amendments, section 366.22, subdivision (b) authorizes a further extension after 18 months for three narrowly defined categories of parents who have faced specified obstacles to reunification: (1) a parent making progress "in a court-ordered residential substance abuse treatment program"; (2) "a parent who was either a minor parent or a nonminor dependent parent at the time of the initial hearing"; and (3) "a

parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security." (§ 366.22, subd. (b), added by Stats. 2008, ch. 482, § 3, pp. 3440–3441 and amended by Stats. 2010, ch. 559, § 18 [adding requirement that substance abuse treatment programs be "court-ordered" and "residential"]; Stats. 2012, ch. 845, § 12 [adding exception for United States Department of Homeland Security custody]; Stats. 2015, ch. 284, § 2 [adding exception for minor or dependent parents]; Stats. 2015, ch. 425, § 11.5 [same].) But even for parents falling within this narrow exception, an extension is not automatic. The parent must be making "significant and consistent progress" either in the substance abuse treatment program, if applicable, or in establishing a safe home for the child. (§ 366.22, subd. (b).) Further, the court must decide (1) that extending services would be in the "best interests of the child," and (2) either that there is a "substantial probability" that the child will be returned to the parent's custody and safely maintained in the home during the extension period, or that "reasonable services have not been provided to the parent." (*Ibid.*) If these conditions are not met, then the usual timeline set forth in section 366.22, subdivision (a)(3) governs.

The plain text thus answers the question before us. Unlike the statutory provisions governing the six- and 12-month hearings, the statutory provision governing the 18-month hearing contains no provision requiring the court to extend services if it concludes that reasonable services have not been offered or provided. (Compare § 366.22 [governing the 18-month hearing] with Welf. & Inst. Code, § 366.21, subds. (e)(3), (g) [governing the six- and 12-month hearings].) Rather, as a general rule, once a child has been out of a parent's custody for

18 months, the court must proceed to set a hearing to select a permanent plan for the child. (§ 366.22, subd. (a)(3).) The statute does create an exception for the narrow subset of parents defined in section 366.22, subdivision (b). (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504 (*Earl L.*); *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 224; *In re J.E.* (2016) 3 Cal.App.5th 557, 564–565; *N.M. v. Superior Court* (2016) 5 Cal.App.5th 796, 805–807 (*N.M.*); *In re D.N.* (2020) 56 Cal.App.5th 741, 761, fn. 18; *Michael G., supra,* 69 Cal.App.5th at p. 1142.) But even for that narrow subset of parents, subdivision (b) instructs that the court is not required to grant an automatic extension based on the inadequacy of reunification services; the court must also consider whether the further extension is in the best interests of the child.

The legislative history reinforces this straightforward reading of the text. As already explained above, in 1991, the Legislature amended the dependency law to separate the juvenile court's obligation to determine the reasonableness of services from its decision to set a permanency planning hearing. The history indicates this was a deliberate choice. As the Legislative Counsel's Digest explained of the proposed amendment: "This bill would require a court to determine whether reasonable services have been offered or provided to the parent or guardian but would delete that requirement as a precondition for developing a permanent plan." (Legis. Counsel's Dig., Sen. Bill No. 475, 4 Stats. 1991 (1991–1992 Reg. Sess.) Summary Dig., p. 352.)

Notably, at the same time, the Legislature amended section 366.26 to prohibit the termination of parental rights at the permanency planning hearing if, "at each and every hearing

at which the court was required to consider reasonable efforts or services, the court has found that . . . reasonable services were not offered or provided." (Stats. 1991, ch. 820, § 5, p. 3649; see Stats. 2005, ch. 634, § 2, p. 4842 [shortening "each and every hearing" in this provision to "each hearing"; currently codified as § 366.26, subd. (c)(2)(A)].) Courts have interpreted this provision to "preclude[] termination of parental rights when . . . the department has failed to offer or provide reasonable reunification services to a parent *throughout* the reunification period." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016 (*Mark N.*), italics added; accord, *In re T.M.* (2009) 175 Cal.App.4th 1166, 1172.) This latter amendment reinforces the conclusions to be drawn from the first: The Legislature presumably would not have thought it necessary to create this safeguard for the conduct of section 366.26 permanency planning hearings if a court were always required to find reasonable services had been offered or provided — including in the extension period preceding the 18-month review — before the permanency planning hearing could even be set.

In sum, we can safely conclude that the statute means what it says. Though a court at the 18-month review hearing must determine whether reasonable services have been offered or provided to the parent, an affirmative answer is not a statutory prerequisite to setting the permanency planning hearing. (§ 366.22, subd. (a)(3); see *Mark N., supra*, 60

Cal.App.4th at p. 1016, fn. 9; *N.M.*, *supra*, 5 Cal.App.5th at p. 807.)[7]

Father acknowledges the text of section 366.22, subdivision (a)(3) is clear. But he argues that it is in tension with a separate provision also governing the conduct of the 18-month review hearing, Welfare and Institutions Code section 361.5 (section 361.5), subdivision (a)(4)(A). He focuses on the following language:

---

[7] Though the legislative history does not explain why the Legislature continued to require juvenile courts to determine the reasonableness of services, the parties and amici curiae suggest the answer lies primarily in federal law. Under the federal statute that prompted the creation of the modern California dependency system, an agency can lose federal funding if it fails to make reasonable efforts to reunify the family. (See 42 U.S.C. §§ 671(a)(15)(B), 672(a)(1), (a)(2)(A)(ii); 45 C.F.R. § 1356.21(b) (2023); see also *Cynthia D.*, *supra*, 5 Cal.4th at pp. 246–247 [discussing federal origins of state scheme]; *In re D.C.D.* (2014) 629 Pa. 325, 347–348 [105 A.3d 662, 675–676] [discussing federal funding scheme].)

Additionally, a court's determination regarding the provision of reasonable services at the 18-month review directly affects its authority under other parts of the California dependency scheme. As explained above, under section 366.26, subdivision (c)(2)(A), a court at the permanency planning hearing may not terminate parental rights and place the child for adoption if it finds that reasonable services were never provided throughout the reunification period. (*Mark N.*, *supra*, 60 Cal.App.4th at p. 1016.) And as we will explain at greater length in part II.C., *post*, whether reasonable services were offered or provided in the period preceding the 18-month review is relevant to the court's exercise of its discretionary authority to continue "any hearing" under section 352, notwithstanding otherwise applicable statutory time limits.

"The court shall extend the time period [up to 24 months after the loss of custody] only if it finds that it is in the child's best interest to have the time period extended and that there is a substantial probability that the child will be returned to the physical custody of the child's parent or guardian who is described in subdivision (b) of Section 366.22 within the extended time period, *or that reasonable services have not been provided to the parent or guardian.*" (§ 361.5, subd. (a)(4)(A), italics added.)

Focusing on that same language, some Courts of Appeal have concluded that section 361.5, subdivision (a)(4)(A) authorizes the extension of services at the 18-month hearing in any case in which reasonable services have not been provided. (*In re M.F.*, *supra*, 32 Cal.App.5th at p. 23; *T.J.*, *supra*, 21 Cal.App.5th at pp. 1255–1256.) Father, drawing on this reasoning, contends that section 361.5, subdivision (a)(4)(A)'s instructions about extensions conflict with the instructions in section 366.22, subdivision (a)(3). He argues that the conflict should be resolved in favor of the more lenient approach.

Father's argument is based on a misreading of section 361.5, subdivision (a)(4)(A). That provision does not, in fact, generally authorize an extension of reunification services after 18 months whenever a court determines that reasonable services have not been provided. A fuller rendition of the provision provides important context for the language on which Father relies:

"Notwithstanding paragraph (3) [governing extensions after 12 months], court-ordered services may be extended up to a maximum time period not

to exceed 24 months after the date the child was originally removed from physical custody of the child's parent or guardian if it is shown, *at the hearing held pursuant to subdivision (b) of Section 366.22*, that the permanent plan for the child is that the child will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that it is in the child's best interest to have the time period extended and that there is a substantial probability that the child will be returned to the physical custody of the child's parent or guardian who is described in subdivision (b) of Section 366.22 within the extended time period, or that reasonable services have not been provided to the parent or guardian." (§ 361.5, subd. (a)(4)(A), italics added.)

As the italicized text makes clear, section 361.5, subdivision (a)(4)(A) applies only "at the hearing held pursuant to subdivision (b) of Section 366.22" — which, as we have already explained, takes place only if the parent fits into one of three narrowly defined categories of parents who have faced specified obstacles to reunification, such as recent incarceration or institutionalization.[8] There is, therefore, no conflict between

---

[8] Although *In re M.F.* misinterpreted section 361.5, subdivision (a)(4)(A) to apply more broadly than it does, the issue before that court concerned the denial of reasonable services before the 12-month review hearing, not the 18-month review. (*In re M.F.*, *supra*, 32 Cal.App.5th at p. 20.) *T.J.*, *supra*, 21 Cal.App.5th 1229, on which *In re M.F.* had relied for its interpretation of section 361.5, subdivision (a)(4)(A), likewise

section 361.5, subdivision (a)(4)(A) and section 366.22, subdivision (a)(3). On the contrary, the two provisions reflect the same rule: They both authorize extensions for parents in one of three narrow categories, and they both identify the same considerations to determine whether a six-month extension is warranted, including whether the extension is in the best interests of the child. For Father and other parents who do not fall within one of those three categories, section 361.5, subdivision (a)(4)(A) does not apply.

## C.

Although the governing provisions do not offer automatic relief to parents who have not received reasonable services in the period immediately preceding the 18-month review, neither do they leave parents without any possible remedy. We have already discussed the statutory remedy for the three narrow

---

involved a different issue. There, the parent was never offered or provided reasonable reunification services at any point during the first 18 months after the child was first removed from parental custody. (*T.J.*, at pp. 1249–1251, 1256–1257; accord, *In re M.S.* (2019) 41 Cal.App.5th 568, 595 [citing section 361.5, subdivision (a)(4)(A) and *T.J.*, *supra*, in a case involving the remedy available to parents who had never received reunification services].)

Each case deals with an issue different from the one we confront here, and largely for reasons explained at greater length below (see pt. II.C., *post* [discussing the court's extension authority under § 352]), their mistaken reading of section 361.5, subdivision (a)(4)(A) does not call into question their ultimate holdings. We therefore disapprove *In re M.F.*, *supra*, 32 Cal.App.5th 1, *T.J. v. Superior Court*, *supra*, 21 Cal.App.5th 1229 and *In re M.S.*, *supra*, 41 Cal.App.5th 568 only to the extent that their reasoning reflects a different understanding of that statutory provision than that set forth in this opinion.

categories of parents identified in section 366.22, subdivision (b). But in addition to the remedy made available under that provision, California courts have also long recognized an " 'emergency escape valve' " under section 352, a general provision governing continuances in dependency cases. (*In re D.N.*, *supra*, 56 Cal.App.5th at p. 762; see § 352.) As the Courts of Appeal have held, this section 352 escape valve is available to all parents in exceptional situations in which the court determines that extending services and continuing reunification efforts beyond 18 months is not contrary to the child's interests.

Section 352 provides that courts may "continue any hearing" under the dependency law "beyond the time limit within which the hearing is otherwise required to be held" (§ 352, subd. (a)(1)), provided there is "good cause" (*id.*, subd. (a)(2)) and a continuance would not be "contrary to the interest of the minor" (*id.*, subd. (a)(1)). In evaluating the minor's interest, the court "shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid.*)

By its terms, the statutory discretion to continue "any hearing" under section 352 extends to the section 366.26 permanency planning hearing. (§ 352, subd. (a)(1); e.g., *In re Michael R.* (1992) 5 Cal.App.4th 687, 694 ["section 352 [was enacted] so a party could continue the section 366.26 hearing"]; *Mark N.*, *supra*, 60 Cal.App.4th at p. 1016 ["section 352 . . . authorizes a continuance of *any* hearing upon a showing of good cause"]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1779 ["[section 352] indicates . . . that the court has discretion upon a showing of good cause to continue juvenile dependency hearings beyond the statutory time limits"].) In the past, California

courts have found good cause in a number of cases where "'extraordinary circumstances'" justified an extension and doing so was consistent with the child's best interests. (*In re D.N.*, *supra*, 56 Cal.App.5th at p. 762.) "Extraordinary circumstances exist when 'inadequate services' are offered by the child welfare agency or 'an external force over which [the parent has] no control' prevented the parent from completing a case plan." (*Ibid.*) Examples include cases where a parent never receives reunification services or a reunification plan over the 18-month reunification period (see *Mark N.*, at p. 1017; *In re Dino E.*, at p. 1778); the parent was hospitalized for most of the reunification period but demonstrated an "impeccable record of visitation and efforts to comply with the reunification plan" (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1777–1778; see *id.* at pp. 1798–1799); or the parent sought a continuance to complete a program required by the reunification plan that was otherwise impossible to finish in time (*In re Michael R.*, at p. 695).[9]

The harder question is whether the authority to continue a permanency planning hearing also includes the authority to

---

[9] A court's use of its discretionary authority under section 352 may be particularly appropriate in cases where a parent has never received reasonable services during the reunification stage. Under section 366.22, subdivision (a)(3), a juvenile court may proceed to a section 366.26 hearing even if reasonable services were never provided, but under section 366.26, subdivision (c)(2)(A), this deficiency would prevent the court from terminating parental rights and placing the child for adoption. In such cases, California courts have recognized the availability of relief under section 352 to extend the review period and order an additional six months of reunification services. (See, e.g., *Mark N.*, *supra*, 60 Cal.App.4th at p. 1016.)

extend reunification services in the meantime, notwithstanding the usually applicable 18-month time limit on services. (See § 361.5, subd. (a)(3)(A) ["court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of the child's parent or guardian"].) For decades, every Court of Appeal to address this issue has assumed that the answer is yes. (See, e.g., *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510–1511; *Mark N.*, *supra*, 60 Cal.App.4th at pp. 1016–1017; *In re Dino E.*, *supra*, 6 Cal.App.4th at pp. 1778–1780; *In re Elizabeth R.*, *supra*, 35 Cal.App.4th at pp. 1798–1799; *In re J.E.*, *supra*, 3 Cal.App.5th at p. 564.)[10] We now confirm that the assumption is correct. The power to continue the permanency planning hearing implies a power to continue reunification efforts. Section 352 makes clear that, despite the law's precise timeline for dependency proceedings, the " ' "Legislature never intended a strict enforcement" ' " of these statutory limits to ' "override all other concerns[,] including preservation of the

---

[10] Some Court of Appeal opinions contain language stating that services can be extended beyond 18 months only if the conditions in section 366.22, subdivision (b) are met. (E.g., *San Joaquin Human Services Agency v. Superior Court*, *supra*, 227 Cal.App.4th at pp. 222–223; *N.M.*, *supra*, 5 Cal.App.5th at pp. 805–806.) But these courts did not address whether a trial court has the discretion under section 352 to extend the timeline notwithstanding the statutory deadlines. (See *In re J.E.*, *supra*, 3 Cal.App.5th at p. 566 ["The appellate court [in *San Joaquin*] did not consider, however, whether the trial court had discretion under section 352 to continue the 18-month review hearing and extend reunification services up to 24 months upon a showing of good cause"].) The parties cite no case, and we are aware of none, in which a court has held that a juvenile court lacks such discretion.

family when appropriate." ' " (*In re D.N.*, *supra*, 56 Cal.App.5th at p. 762, quoting *In re M.S.*, *supra*, 41 Cal.App.5th at pp. 594– 595.) Nor did it intend to strip the trial court of any flexibility to adjust the default timelines when doing so may be required to remedy a critical defect in the process or address other unanticipated obstacles to family reunification. (*In re D.N.*, at p. 762; see also *In re M.S.*, at p. 595 [explaining that this conclusion also finds support in principles of due process, which safeguard parents' rights "in the care, companionship, and custody" of their children].)

This flexibility applies to the timeline for reunification services just as it applies to the timeline for selecting a permanent plan. Under the statutory scheme, the two are inextricably intertwined: The very purpose of the reunification stage is to facilitate services that promote the preservation of the family before the court must finally determine whether the family can, in fact, be preserved. Considering the terms and intended operation of the dependency system, we consider it unlikely that the Legislature would have given courts the discretion to delay the selection of a permanent plan where, for example, reasonable services have not been provided, without also giving courts the corresponding discretion to order additional reunification services in the meantime. The Agency here agrees that courts have such authority. The Courts of Appeal are uniformly in accord. And although the Legislature has amended the dependency statutes many times since courts first recognized the availability of this " 'emergency escape valve' " under section 352 (*In re D.N.*, *supra*, 56 Cal.App.5th at p. 762), the Legislature has never acted to curtail courts' authority to grant discretionary extensions in exceptional situations. We therefore confirm that while an extension of

services is not required under the statute, the juvenile court does have the discretion under section 352 to continue a section 366.26 permanency planning hearing — and in the meantime, to extend reunification services past the 18-month mark — in extraordinary cases. Before granting the extension, however, the court must determine that the extension, and the resulting delay to the child's permanent placement, is not contrary to the child's interests.[11]

In sum, a parent who is denied reasonable services between the 12- and 18-month hearings is not statutorily entitled to an automatic extension of services at the 18-month review. This means the juvenile court may set the section 366.26 permanency planning hearing — and terminate services and perhaps also parental rights — even if it determines that the parent did not receive reasonable reunification services in the immediately preceding 12- to 18-month review period. Parents falling into one of the statutory categories set out in section 366.22, subdivision (b) may seek an extension under that section; before granting the extension, the court must be satisfied that the pertinent statutory conditions are met, including the condition that a further extension be in the best interests of the child. Parents who do not fall under section 366.22, subdivision (b) may seek a discretionary continuance of the section 366.26 hearing and an extension of reunification services under section 352. In determining whether to grant

---

[11] We disapprove *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1212–1214 to the extent that it relied on section 366.22, subdivision (a) for a court's discretionary authority to order an extension of services at the 18-month review hearing. That provision, by its terms, contains no generally applicable authority for seeking such extensions.

relief, the juvenile court must consider whether there are exceptional circumstances constituting good cause for the continuance and whether the continuance would be contrary to the child's interests.

## D.

Father argues that constitutional concerns should prompt us to read the statutory scheme differently. He contends that when a court has already determined that reunification services should be extended until the 18-month review because there is a substantial probability of reunification — as it did in his case — the failure to provide reasonable reunification services necessarily undermines the accuracy and fairness of any subsequent decision to abandon reunification and proceed to a section 366.26 hearing. According to Father, parents also have a constitutional right to their child's " 'companionship, care, custody, and management,' " and a court must be satisfied that reasonable services were provided before continuing to a hearing where those rights may be terminated. Due process therefore requires reading into the statutory scheme a provision requiring an extension of services when a court finds at the 18-month review that reasonable services were not provided during the immediately preceding review period.

Father's constitutional avoidance argument is unavailing. Although we ordinarily construe statutes to avoid serious constitutional problems, we do so only when such a reading is fairly possible. (E.g., *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373 ["the canon [of constitutional avoidance] 'is qualified by the proposition that "avoidance of a difficulty will not be pressed to the point of disingenuous evasion" ' "].) Here, Father offers no plausible interpretation of the statutory text that would

authorize us to craft the sort of automatic extension provision he seeks. We cannot, as Father asks, rewrite the statute "merely to eliminate a potential constitutional conflict." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826.)

More fundamentally, however, Father fails to establish that the statute as written raises significant constitutional concerns. In enacting the dependency statutes, the Legislature sought to achieve a careful balance between family reunification on the one hand and permanency for the child on the other. (See *In re Matthew C.*, *supra*, 6 Cal.4th at p. 400; *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308.) Under this scheme, the balance tips towards permanency as the time since removal increases. (See *Tonya M.*, *supra*, 42 Cal.4th at p. 845 ["The effect of these shifting standards is to make services during [the 6-, 12-, and 18-month periods] first presumed, then possible, then disfavored"]; accord, *Cynthia D.*, *supra*, 5 Cal.4th at p. 256 [describing shifting goals of the dependency scheme at different stages of the proceedings].) Consistent with that general approach, the Legislature has chosen to mandate an extension of the reunification period if reasonable services have not been provided during earlier periods, but decided not to include a comparable mandatory extension provision after the child has been out of her parent's custody for a prolonged period of time. Instead, by establishing a presumptive maximum reunification period of 18 months and giving courts the discretion to extend services beyond that point in extraordinary circumstances, the statutory scheme allows courts to make case-specific determinations about how best to promote the interests of the child while protecting against the erroneous deprivation of parental rights.

At least when reasonable services have already been provided for at least 12 months, as they were here, the failure to provide reasonable services during the 12- to 18-month extension period does not necessarily or unavoidably undermine the accuracy or fairness of the trial court's eventual decisions regarding a permanent plan. Here, the juvenile court found services deficient because of the social worker's unexplained delay in reviewing Father's psychological evaluation; nevertheless, it concluded that extending services for another six months would be fruitless, as Father had not maintained consistent and regular contact with A.G., had not made significant progress in resolving the issues that led to the loss of custody, and had not demonstrated the capacity to complete the components of his case plan.[12] (*Michael G.*, *supra*, 69 Cal.App.5th at p. 1140, fn. 2; cf. *In re J.E.*, *supra*, 3 Cal.App.5th at p. 567 [noting instance where the deficiencies in services related to the " 'core issue' " preventing reunification].) Where the available evidence reliably demonstrates that further reunification services would be unlikely to succeed, due process does not require that a court delay permanency for the child. (See *Earl L.*, *supra*, 199 Cal.App.4th at p. 1505 ["It defies common sense to continue reunification efforts for a parent who has made minimal efforts throughout a case"].) Where, by contrast, deprivation of reasonable services does impede the juvenile court's ability to properly evaluate the prospects for family reunification, the trial court has an emergency escape valve: the discretionary authority under section 352 to continue

---

[12] Father does not challenge any of these findings on appeal, nor does he argue that the trial court abused its discretion in concluding that a further extension would not be in A.G.'s best interests.

a permanency planning hearing and extend reunification services in exceptional circumstances.

Father emphasizes that the possibility of a discretionary extension of services under section 352 is not equivalent to a mandatory, automatic extension. Under section 352, a party must affirmatively request a continuance and demonstrate "good cause," and the trial court must give "substantial weight" to the interests of the minor. (§ 352, subd. (a)(1)–(2).) Additionally, whether to grant a continuance is a decision reviewed for abuse of discretion, a deferential standard. (See *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1047.) But although Father argues otherwise, we are unpersuaded that these are an unreasonable set of conditions to place on the grant of further extensions when a child has already spent 18 months out of her parent's custody. As this court has previously explained, "[s]ignificant safeguards have been built into the current dependency scheme." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 307; see *id.* at pp. 307–308.) As particularly relevant here, a parent has the right to the assistance of competent counsel in requesting and making the case for an extension of time. (Welf. & Inst. Code, §§ 317, 317.5.) The failure to provide reasonable services can constitute good cause (see, e.g., *In re D.N.*, *supra*, 56 Cal.App.5th at p. 762), and indeed, neither the juvenile court nor the Court of Appeal suggested that Father could not demonstrate good cause here based on the Agency's failure to provide reasonable services between the 12- and 18-month hearings (see *Michael G.*, *supra*, 69 Cal.App.5th at p. 1145). The juvenile court cannot terminate parental rights if a parent *never* receives reasonable services. (See § 366.26, subd. (c)(2)(A); *Mark N.*, *supra*, 60 Cal.App.4th at p. 1016.) And should the juvenile court ultimately decide to terminate parental rights,

the parent also has the right to appeal the order — again, with the assistance of counsel — if the parent believes the defects in the reunification process undermined the accuracy or fairness of the court's determination. (§ 366.26, subd. (i)(1).) In sum, even though the statutory scheme may not offer automatic extensions beyond the 18-month mark, the statutory scheme provides adequate safeguards against the risk of the erroneous deprivation of parental rights.

To be clear: Nothing in our holding should be read to condone the Agency's failure in this case. The Agency should have provided Father reasonable services at every period in the reunification stage. The possibility of family reunification depends on the joint efforts of social services agencies and parents. By not providing reasonable services between the 12- and 18-month hearings, the Agency failed to uphold its end of the bargain.

But as the Legislature rightly recognized, any possible remedy for the deficiencies in the Agency's services would affect more than just the parent's interest; it would also affect the child's interest in a timely, safe, and stable placement. The Legislature struck a balance between these vital interests by setting a presumptive 18-month limit on reunification efforts, subject to extension in certain exceptional cases only if, among other statutory requirements, a court determines that the extension, and resulting delay, is not contrary to the child's interests. While that scheme is not the only conceivable way to balance the interests at stake, it is a constitutionally permissible one.

## III.

The judgment of the Court of Appeal is affirmed.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Michael G. v. Superior Court

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 69 Cal.App.5th 1133
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S271809
**Date Filed:** April 6, 2023

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Antony C. Ufland

_____

**Counsel:**

Martin Schwarz, Public Defender, Seth Bank, Assistant Public Defender, and Brian Okamoto, Deputy Public Defender, for Petitioner.

Los Angeles Dependency Lawyers, Dominika Campbell and Dennis Smeal for California Dependency Trial Counsel as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Leon J. Page, County Counsel, Karen L. Christensen, Aurelio Torre, Deborah B. Morse and Jeannie Su, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Jennifer B. Henning; and Samantha Stonework-Hand, Deputy County Counsel (Alameda), for California State Association of Counties as Amicus Curiae on behalf of Real Party in Interest Orange County Social Services Agency.

Law Office of Harold LaFlamme and Hannah Gardner for Real Party in Interest A.G.

Kristin Hallak and Leslie Starr Heimov for Children's Law Center of California, Children's Legal Services of San Diego and Dependency Legal Services as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Brian Okamoto
Deputy Public Defender
341 City Drive South, Suite 307
Orange, CA 92868
(657) 251-6718

Aurelio Torre
Deputy County Counsel
400 West Civic Center Drive West, Suite 202
Santa Ana, CA 92701
(714) 352-1351

Samantha Stonework-Hand
Deputy County Counsel
1221 Oak Street, Suite 450
Oakland, CA 94612
(510) 272-6718