Filed 2/15/24  In re H.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re H.S., A Person Coming Under the Juvenile Court Law. | |
| | D082863 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15943) |
| v. | |
| H.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Nadia J. Keilani, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court ordered that then four-month-old H.S. be detained after the parents, H.S. (Father) and I.B. (Mother), waited 24 hours to seek

medical attention for him after finding him face down in his crib not breathing. The incident resulted in H.S. suffering 90 percent brain damage. Father appeals from a disposition order requiring as part of his case plan that he attend a 52-week TERM[1] child abuse group (the program). He asserts the juvenile court abused its discretion in ordering him to attend the program because half of it focused on issues irrelevant to his case. Father also contends the remaining 26 weeks of the program is duplicative of other portions of his case plan. The San Diego County Health and Human Services Agency (the Agency) argues the court did not abuse its discretion because a significant portion of the program directly related to Father and H.S.'s case. We agree with the Agency and affirm the order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2023, Father found H.S. face down in his crib not breathing.[2] He telephoned Mother to inform her of the situation but did not call 911. Upon Mother's return, the parents observed H.S. display seizure symptoms. Father did online research and "everything online was saying to take [H.S.] to the doctors, but I didn't realize how bad it was." Father called H.S.'s primary care provider and scheduled an appointment for 4:00 p.m. the following day. After evaluating H.S., the primary care provider called emergency services and H.S. was transported to the hospital. A medical evaluation revealed that H.S. was severely malnourished and had suffered a

---

[1]  "The Treatment Evaluation Review Management program (TERM) are therapists approved by the Agency and juvenile court to provide services to parents in dependency cases and file reports directly with the court." (*In re M.F.* (2019) 32 Cal.App.5th 1, 9, fn. 3, disapproved on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8.)

[2]  Undesignated date references are to 2023.

2

" 'severe anoxic brain injury' " with 90 percent brain damage that could result in severe cerebral palsy, blindness, and the inability to walk or talk. The hospital deemed the incident to be a "near fatality."

On May 31, a medical social worker at the hospital expressed concern that the parents were not visiting H.S. and noted that Father worked and Mother attended school or watched H.S.'s two-year-old sibling.[3] A doctor opined the parents committed medical neglect because they failed to obtain timely medical care for H.S. and the infant suffered from " 'nutritional neglect' " because he rapidly grew and had gained weight since his hospitalization. After the parents failed to complete bedside training that would allow them to care for H.S. at home, the Agency filed a petition under Welfare and Institutions Code[4] section 300, subdivision (b)(1).

At the detention hearing on July 13, the court found a prima facie case and that Father was H.S.'s presumed father. It detained H.S. out of home and ordered supervised visits for the parents. On July 18, H.S. was discharged to a licensed foster home. On July 24, the parents accompanied the foster parent to H.S.'s pediatric appointment. Father did not engage with H.S. in the waiting room and instead engaged with the sibling. On July 27, an Agency staff psychologist asked the social worker to consider referring Father to a child abuse group service. On July 28, the social worker submitted referrals for the parents to participate in respective 52-week TERM child abuse groups, in addition to other services.

On August 8, the Agency received a referral alleging possible drug use by Father. At the jurisdiction hearing on August 23, the court made a true

---

[3]    The sibling is not a party to this case.

[4]    Undesignated statutory references are to the Welfare and Institutions Code.

finding on the petition and set a contested disposition hearing.  At the September 28 contested disposition hearing, the juvenile court received the Agency's reports into evidence, including the curriculum for the program.  Father cross-examined the social worker who testified that any time there is physical abuse or severe neglect, the program is recommended based on Agency policy.  The social worker believed the parents would benefit from the program and she consulted with a multidisciplinary team and the Agency's staff psychologist who also recommended this service.  The social worker believed a parent was not required to complete all 52 classes to successfully complete the program but did not know if the provider would discharge a parent who stopped attending the service, even if he or she obtained the requisite insight.

The program includes eight different modules and a relapse prevention plan "specific to the client's own case and refer[s] to past abusive behavior and examples of new, adaptive parenting behaviors.  The safety plan . . . consist[s] of a support network to assist the client in prevention of future abuse, neglect, or non-protection."  The first module relates to family violence, the second module to substance abuse, the third to domestic violence, and the last module relates to substance abuse prevention with children.  The social worker agreed with Father's counsel that family violence, substance abuse, domestic violence, and substance abuse prevention with children were not concerns in this case.  The remaining four modules relate to anger and stress management, childhood developmental issues, effective parenting, and family dynamics.  The social worker agreed with Father's counsel that these four modules were relevant to Father's case.

The parties did not have a copy of the parenting curriculum to allow the court to determine whether the program would be cumulative of the

4

parenting program. Father objected to the inclusion of the program, arguing that half of it was irrelevant. The court inquired if it was possible to narrowly tailor the program so that Father could skip the portions of the program that were not relevant to this case. The social worker indicated this was not possible, and the program was essentially "one size fits all." The social worker explained the program becomes more tailored to the case for the formation of the relapse prevention plan.

The court ordered H.S. removed and reunification services for the parents consistent with their case plans. The court adopted the case plan, which included the program. The court stated, "I understand that maybe not every component of the child abuse class may seem relevant but many are, in fact, relevant . . . . There are many components of this child abuse class that will, in fact, be helpful to you." The court concluded the case plan was appropriate and as narrowly tailored as possible to address the issues presented in this case.

## II.

## DISCUSSION

A.  *Legal Principles*

The juvenile court is authorized to " 'direct any reasonable orders to the parents' of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child (§ 362, subd. (d)), and the juvenile court enjoys broad discretion in crafting a dispositional case plan to this end." (*In re I.R.* (2021) 61 Cal.App.5th 510, 522.) As set forth in *In re M.R.* (2020) 48 Cal.App.5th 412, " '[t]he . . . central unifying tool in child welfare services' is called the 'case plan.' (§ 16501.1, subd. (a)(1).) It is a plan written by the Agency to ensure 'that services are provided to the child and parents or other

5

caretakers . . . in order to improve conditions in the parent's home, to facilitate the safe return of the child to a safe home or the permanent placement of the child, and to address the needs of the child while in foster care.' (§ 16501.1, subds. (a)(2) [goals] & (e) [written].)" (*In re M.R.*, at p. 423.)

"The case plan has several components, including: identifying the reasons for dependency (§ 16501.1, subd. (g)(3)); setting forth specific goals and describing why planned services are appropriate to meet those goals (§ 16501.1, subd. (g)(2)); and describing the services to be provided to assist in reunification (§ 16501.1, subd. (g)(10))." (*In re M.R., supra*, 48 Cal.App.5th at p. 423.) The Agency submits the case plan to the court before the dispositional hearing, and the court must consider the case plan " 'at the initial hearing and each review hearing.' (§ 16501.1, subd. (g)(14); see also § 358, subd. (b)(1); Cal. Rules of Court, rules 5.708(b)(3), 5.706(b)(2).)" (*In re M.R.*, at p. 424, fn. omitted.)

Reunification orders "must be 'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' (§ 362, subd. (c).) 'The reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family.' " ' " (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) However, "[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "We review the propriety of court-ordered reunification services at this stage for abuse of discretion." (*In re D.C.* (2015) 243 Cal.App.4th 41, 56, superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.) We will not disturb a dispositional order unless we find the court " 'exceeded the limits of legal

6

discretion by making an arbitrary, capricious, or patently absurd determination.' " (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 454.)

B.  *No Abuse of Discretion Ordering Father to Participate in the Program*

Father contends the juvenile court abused its discretion by including the program in his case plan because four of the eight program modules addressing substance abuse and domestic violence were irrelevant. He also asserts the remaining 26 weeks of program services were duplicative of the remaining portions of his case plan.

We disagree with Father's second contention that the remaining 26 weeks of program services duplicated other portions of his case plan. At the hearing, Father's counsel agreed with the social worker that the four program modules related to anger and stress management, childhood developmental issues, effective parenting, and family dynamics were relevant to Father's case plan. Each module listed specific topics to be addressed. For anger and stress management, these included signs and symptoms, assertiveness versus aggression, problem solving, time-outs, and relaxation techniques. The childhood developmental module covered developmental topics from infancy through teenage years, including physical; emotional; mental/intellectual; sexual; social; stress on children; special needs children (ADHD, learning disabilities, medically fragile); and understanding individual temperaments. The effective parenting module addressed nurturing children, boundaries, building trust/empathy, communication/active listening, problem solving, safety and health issues, supervising children, parental role, discipline techniques, positive support systems, and school involvement. Finally, the family dynamics

module addressed family of origin, cultural values and beliefs, co-parenting, single parenting, step parenting, and taking care of parents.

The remaining services in Father's case plan included an in-home parenting education program, a public health education program, individual therapy, and participating in the "Intensive Family Preservation Program (IFPP) to ensure all of the family's needs are met, in order to assist [H.S.] with his medically complex needs." The social worker explained that the IFPP involves a protective services worker helping the family multiple times a week to assist them with resources such as finding daycare, transportation, and financial resources. The 12-week in-home parenting education program is similarly personalized to the family by offering one-on-one contact with a provider focusing on home safety, including when to call 911 or take a child to the hospital.

Father has not convinced us that these portions of his case plan duplicate the topics covered in the four relevant program modules. The other portions of Father's case plan are personalized to the child, family, and home to directly address the behavior or circumstances that resulted in the court taking jurisdiction of H.S. In contrast, the four program modules that Father agreed were relevant to his case address broad categories in a group setting clearly designed to be educational to participants by providing the information and tools necessary for Father to protect H.S., understand H.S., and address H.S.'s needs as he grows older. Importantly, the program also included a relapse prevention plan tailored to Father's case.

Although the social worker agreed that the in-home parenting class addressed some of the Agency's concerns, she believed the program focused on other concerns the Agency had regarding Father's parenting ability and understanding of child development. The social worker's belief was not

unique because the Agency's staff psychologist also recommended Father participate in the program. While we agree with the social worker that some portions of the program may overlap with Father's in-home parenting education program, the in-home parenting education program is designed to give Father the skills to allow H.S. to return home, whereas the program also addresses H.S.'s future needs. Father has not shown the program duplicates the other portions of his case plan. Because the program does not duplicate the other services in Father's case plan, we reject his argument that the juvenile court abused its discretion when ordering him to comply with the program.

Father also argues that the four program modules addressing child abuse and family violence, substance abuse, domestic violence, and substance abuse prevention with children are irrelevant to the facts of this case. The social worker agreed with Father's counsel that family violence, substance abuse, domestic violence, and substance abuse prevention with children were not concerns in this case. With respect to substance abuse, the social worker indicated that while there had been reported concerns, substance abuse was not a "safety" concern in the case plan "at this time." However, the social worker revealed that the Agency was investigating a hotline referral regarding substance use by Father during visits. The reporting party stated Father "is definitely abusing drugs. When he is seen for appointments or visits with the other child, he steps out within a very short time to 'use the restroom' but is gone for long periods. On 08/07/23, during a doctor appointment, [Father] stepped out of the appointment and then never returned. His hands always have residue on them. . . . [T]his is not dirty or hygiene related, it is drug residue, it's black ash and tar like, has a very strong toxic smell, and it comes off on to the baby and the [other] child."

9

We disagree with Father's assertion that education regarding substance abuse is irrelevant. As a preliminary matter, the absence of a jurisdictional finding that Father had substance abuse issues does not undermine the validity of the juvenile court's dispositional order. (See *In re Briana V., supra*, 236 Cal.App.4th at p. 311 ["The problem that the juvenile court seeks to address [via a dispositional order] need not be described in the sustained section 300 petition."].) Accordingly, "when the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.) On this record, we conclude that requiring Father's participation in the two substance abuse modules of the program constituted a reasonable exercise of the court's discretion tailored to advancing H.S.'s interests.

The final two modules are (1) child abuse and family violence and (2) domestic violence. While we acknowledge there is no evidence of domestic or family violence, the juvenile court reasonably concluded that child abuse education would benefit Father. The parents' failure to provide H.S. with adequate food was a basis for the court's jurisdictional finding under section 300, subdivision (b)(1). In addition, the "prolonged failure to provide adequate food" to a child is a form of child abuse. (§ 300, subd. (e).) Accordingly, the juvenile court reasonably concluded Father would benefit from participating in the child abuse module.

In summary, the record shows that the majority of the " 'one size fits all' " program was relevant to Father's case. The program included educational components not contained in the more individualized portions of Father's case plan. More importantly, the program includes a relapse prevention plan specific to Father's case. Accordingly, we are unable to say

10

the juvenile court exceeded the bounds of reason by ordering Father to participate in the program.

## DISPOSITION

This disposition order is affirmed.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.